## RHODA N. LINTON vs. FRANK D. ALLEN.

Suffolk. November 18, 1890. — October 23, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Vendor and Purchaser — Bond for a Deed — Covenant of Warranty — Performance — Presumption — Agency — Evidence — Exceptions.*

The submission to a jury of specific questions, as to whether there was a mutual rescission and abandonment of a contract by the parties, and whether the plaintiff was ready and willing to perform it and the defendant neglected upon request to do so, is correct, if both rescission and abandonment are in issue, and no reason is urged or appears why such submission was prejudicial to the defendant's interest.

A general covenant of warranty in a deed does not estop the grantor from claiming a breach of explicit conditions, incorporated in the granting part of the deed, restricting the future use of the granted property.

If in an action to recover back money paid under a bond for a deed there is evidence of the giving of the bond and of part payment, and of a willingness and readiness on the plaintiff's part to pay the balance, of which however no actual tender is made, and to accept a deed, which is not tendered and cannot be given because the title is defective, and of an attempt by the plaintiff at rescission and settlement, the defendant's request to take the case from the jury is properly refused, although there was no absolute refusal by him to make the conveyance.

The obligor in a bond to convey land is not "ready to perform," in a legal sense, so long as he is not in a condition to convey a good title.

A request for a ruling that the fact that incumbrances existed upon property which the defendant had covenanted to convey did not of itself excuse the plaintiff from making a tender of amounts due on notes given by him for the purchase money, is properly denied, if sufficient and correct instructions are given upon the question whether a tender was necessary.

If a bill of exceptions, after stating that certain instructions were requested, but not given, fails to show either that no instructions were given on the subject matter thereof, or that correct instructions thereon were not given, but introduces its statement of the charge by reciting that "the judge charged the jury, among other things, as follows," it will be presumed that instructions not stated were given upon the matters to which the requests relate, and that they were correct.

In an action to recover back money paid upon a bond for a deed, requests for rulings based upon the theory that no demand or offer made on or to the husband of the obligor could be material are properly denied, if exceptions alleged by the defendant clearly warrant the inference that the contrary doctrine was correct, by disclosing that the husband acted as her agent in her lifetime, and was for a time her special administrator, and is the residuary legatee under her will.

In an action to recover back money paid upon a bond for a deed, in which it appears that the obligee, after making part payments and being ready and willing to accept a deed, sought to rescind because of a defect in the title, communications between the parties after the date of a letter from the obligee to the obligor, in which the former states her conclusion to give up the property, are admissible in evidence upon the issues of rescission, abandonment, and breach of covenant.

In an action to recover back money paid under a bond for a deed, the defence that the obligee cannot recover for repairs or taxes caused by her failure to perform her agreement is disposed of by a finding of the jury that there was no such failure.

The admission of parol evidence of the contents of a letter, of which a duplicate is already in evidence, affords no ground of exception.

An exception to the exclusion of a statement, on the ground that it should have been admitted as made in the presence of one of the parties, cannot be sustained, if the bill of exceptions does not state that such party was present, and no mention of such ground was made when the evidence was excluded, and the statement also relates to an immaterial matter.

At the trial of an action to recover back money paid upon a bond for a deed, where the defence is that the obligee who brings the action failed to perform, conversations between the plaintiff and the obligor's special administrator and residuary legatee, which take place upon his demanding payment of notes given by the obligee for a balance due, to the effect that she hesitated about paying

without a good title but would like to pay if he would give her a good title, and, finally, that she would pay no more until she got a title, are admissible in evidence.

CONTRACT, against the administrator *de bonis non,* with the will annexed, of the estate of Chloe A. Berry, on a bond for a deed signed by the plaintiff and by the testatrix.

At the trial in the Superior Court, before *Staples,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which, so far as material to the points decided, appear in the opinion.

The case was submitted on briefs in November, 1890, and afterwards was submitted on the same briefs to all the judges except *Field,* C. J.

*W. A. Gaston,* for the defendant.

*F. S. Hesseltine,* for the plaintiff.

BARKER, J. This is an action of contract, to recover money paid by the plaintiff as part of the price of land in Cottage City, under a bond for a deed from Chloe A. Berry, and money expended upon the estate while the plaintiff was in occupation under the bond, and for taxes. The action was brought on June 22, 1886, and the bond is dated October 30, 1882. Chloe A. Berry died testate in August, 1883, never having had a child born alive by her husband, Zebina E. Berry, who, on April 21, 1884, was appointed special administrator of her estate. On September 25, 1884, Charles F. Allen was appointed executor of her will, and he dying, the defendant was appointed administrator *de bonis non* on December 1, 1884. Upon the execution of the bond, the plaintiff paid $1,000 as part of the purchase money, and gave three notes for $3,000, the balance, each note being for $1,000, payable in one, two, and three years respectively. She occupied the place during the Cottage City seasons of 1883 and 1884, paying the taxes of 1883, and early in 1883 made repairs or improvements, as she now claims, at the request of Mrs. Berry.

In the latter part of 1884 she expressed, in a letter dated November 23, 1884, her intention to give up the property, contending that the title was defective, and surrendered the keys, or some of them, to the defendant's agent. In the spring of 1885 she had a personal interview with the defendant, at which she

sought to arrive at a settlement. Failing in this, she brought this action, contending that she had rescinded the contract.

When the case was before us upon a former bill of exceptions, (*Linton* v. *Allen*, 147 Mass. 231,) it was held that the agreement was "that Mrs. Berry should sell the land to the plaintiff for $4,000, — $1,000 to be paid down, and $1,000 within one year, $1,000 within two, and $1,000 within three years, — for which she was to give notes payable at three different dates, but with the privilege of anticipating payments, and that possession should be given on March 1, 1883, and the deed should be given upon the payment of the notes. The bond was given upon the payment of the $1,000, and the delivery of the notes to secure the performance of the agreement by Mrs. Berry." It was further held, upon a review of the authorities, that " such a contract would not be performed by Mrs. Berry by tendering a deed which did not convey the title to the land ; and her inability and refusal to give a good title would excuse the plaintiff from performing the conditions on her part to be performed, and entitle her to recover back the money paid ; . . . that the plaintiff was not entitled to demand a deed of the property until she had paid or was ready to pay her notes in full ; that she was entitled to claim a good title to the property and not a properly executed warranty deed only."

After this decision, at the second trial, the presiding justice, against the defendant's objection, submitted to the jury three questions, which, with the answers of the jury, were :

" 1. Was the contract rescinded by the mutual consent of the parties after said Allen became administrator ? "    " Yes."

" 2. Was the contract abandoned by mutual consent of the parties after said Allen became administrator, leaving the parties in the state in which they were at the time of such abandonment ? "    " No."

" 3. Was the plaintiff ready and willing to perform her part of the contract, and did she notify the defendant, and request the performance of his part, and did the other party refuse or neglect to perform the contract ? "    " Yes."

The presiding justice ruled that Mrs. Berry had never been in a condition to give the plaintiff a good title, owing to the restrictions and conditions in her deed, and the evidence as to

what had been her use of the premises, and the location of the building, and submitted the case to the jury, upon instructions which allowed a verdict for the plaintiff if they found that she had been willing and ready to perform her part of the contract, and that the other party had refused or neglected, upon demand for a deed, to give one. The jury returned a verdict for the plaintiff.

We consider only the exceptions which have been argued.

1. If the presiding justice was right in submitting the case to the jury, he clearly might ask them to answer the three questions. Both rescission and abandonment were in issue at the trial. No reason is urged why the submission of these questions was prejudicial to the interests of the defendant, and none appears to us. The exception to their submission is overruled.

2. It will be convenient to examine early the correctness of the ruling, that Mrs. Berry was not in a condition to give a good title on account of the conditions and restrictions contained in her deed. That deed contained, after the description, the following clause: "The cottage not to be erected nearer the avenue than five feet, and five feet from the adjoining lots." Then followed, among other conditions, — a breach of any one of which, it was provided, should work a forfeiture of the estate, and reinvest it in the grantor, — a condition that the grantee should within one year cause to be erected on the granted premises "a dwelling-house, to be used exclusively as a residence for a private family." The habendum is to the grantee, and her heirs and assigns, "so long as he and they shall well and truly keep and perform the conditions hereinbefore contained." The covenants are of seisin in fee, freedom "from all incumbrances, except as herein set forth," of good right to sell and convey, and that the grantor "will warrant and defend the same to the said Chloe E. Berry, her heirs and assigns forever." The bill of exceptions states that the evidence showed that the house upon the lot had been used by Mrs. Berry as a boarding and lodging house, and had been let by her in 1882 for that purpose; it also appears that the uncontradicted evidence tended to show that after the erection of the house on lot 135, and the purchase of the adjoining half of lot 137 by her, an addition was made to

the house extending to the line of lot 137, and a piazza built out to the line of the avenue. The land described in the bond was lot 135 and one half of lot 137. It appears that Mrs. Berry had acquired her title to the one half of lot 137 from one Harrison, to whom it had been conveyed by a deed similar to that under which Mrs. Berry held lot 135. The defendant asked the court, among the rulings mentioned above, to rule " that the deeds of the Oak Bluffs Company did not create a restriction or condition which could be enforced in respect to the position of the buildings on the lots "; " that the conditions contained in the deeds of lots 135 and 137 Circuit Avenue did not make the titles to the lots bad "; and " that the title to lots 135 and 137 Circuit Avenue was good, and notwithstanding the conditions mentioned in the deeds."

In support of his exceptions to the refusal to give these rulings, and to the instruction given, the defendant argues that the conditions were by the deed itself made unenforceable by the only party who could take advantage of them, the grantor and those claiming under him being estopped by the general covenant of warranty from making any claim upon the property, and cites the cases of *White* v. *Patten*, 24 Pick. 324, and *Estabrook* v. *Smith*, 6 Gray, 572. The latter case states only the familiar doctrine, that if one who has no title conveys with warranty, and afterwards acquires title and conveys to another, the second grantee is estopped from claiming that his grantor was not seised at the time of the first deed. In *Estabrook* v. *Smith*, the defendant had conveyed to the plaintiff lands subject to a mortgage, and had excepted the mortgage in his covenant against incumbrances, but had made a general covenant to warrant and defend against the lawful claims and demands of all persons; and the case holds that the mortgage was not excepted from the covenant of warranty. The ground stated for holding that the covenant of warranty was not restricted nor limited by the restricted covenant against incumbrances was, that the two were not connected covenants of the same import and directed to one and the same object, and that the grantor might well covenant to warrant against the eviction of his grantee by the holder of the mortgage, though he could not covenant against all incumbrances without rendering himself forthwith liable to an

action.　This doctrine falls far short of supporting the contention that a general covenant of warranty estops a grantor from claiming a breach of explicit conditions incorporated in the granting part of the same deed, and restricting the future use of the property.　Such a construction of the covenant would render the conditions wholly nugatory.·　But effect is to be given to all the words of the instrument, and the true meaning is to be extracted from a comprehensive view of the whole.　*Sumner* v. *Williams,* 8 Mass. 162, 218.　*Browning* v. *Wright,* 2 B. & P. 13. It would be a forced and unnatural construction, plainly contrary to the intent of the parties, to hold that by such a warranty a grantor had estopped himself from claiming a breach by his covenantee of conditions upon which the same deed declared that the estate was to be held.　That which the covenantor in such a deed undertakes to warrant and defend against all lawful claims is not the land, or an absolute and unqualified estate in it, but " the premises "; that is, the defeasible estate conveyed by the preceding grant, upon conditions expressed in the same deed.　The defendant's exceptions upon this branch of the case must, therefore, be overruled.

3. The presiding justice was right in refusing to order a verdict for the defendant.　At this trial there was evidence tending to show the giving.of the bond, the payment of the one thousand dollars by the plaintiff, and an uncured defect in the obligor's title; also that the plaintiff had been ready and willing to complete the payment for the property and accept a deed which should convey to her a good title, and that she had caused statements to be made to that effect to Mrs. Berry, and after her death to those in charge of her estate.　There was undisputed evidence that no such deed had been tendered to her, and that no deed conveying a title free from the defect could have been made by Mrs. Berry or her representatives or devisees.　There was also evidence tending to show that before bringing suit she had given up the possession of the estate, and tried to procure a settlement with the defendant, contending that she had not been able to get a good title to the property, and was entitled to something from Mrs. Berry's estate.　But there was no evidence or claim that she had made an actual tender of the amount due upon her notes.

The defendant, in addition to his theory of title, of which we have disposed, rests his contention that a verdict should have been ordered in his favor upon the ground that there was no absolute refusal to convey, and that there must have been such an absolute refusal to waive the necessity of tender by the plaintiff. In support of this position he relies upon the case of *Brown* v. *Davis*, 138 Mass. 458. That was a case in which both parties to the bond for a deed remained inactive, neither being ready to perform his contract. It holds that an actual tender was not necessary, but that the plaintiff must show that he was ready, willing, and able to do his part, and the defendant had notice thereof, and that nothing short of this would put the defendant in legal default. In the case at bar the testimony of the plaintiff and of the witness Smith tended to show that she was ready (which includes the ability to perform) and willing to perform her agreement, and that she notified the other party thereof, and requested a conveyance. The weight of this evidence was for the jury, and the defendant's exception to the refusal to order a verdict in his favor, or to rule that the plaintiff could not maintain her action, must be overruled.

4. The same considerations govern the question raised by the exception to the refusal to rule " that if neither the defendant or Mrs. Berry, or Mr. Berry as special administrator, or Mr. C. F. Allen as executor, refused to give the plaintiff a good title, and did not do any act which would make the conveyance of a good title impossible, the plaintiff, in order to recover on the count on the bond, must show a tender of payment of the notes."

5. The ruling requested, " that if Mrs. Berry and all those who represented her estate were always ready and willing to give the plaintiff a good title, upon the performance by her of all that she was required to do, and did not refuse so to do, and did not put it out of their power so to do, the plaintiff cannot recover," was also properly refused, because there was no evidence that Mrs. Berry or any of her representatives were ever in a condition to convey a good title, without which they could not be ready, in a legal sense, to give the plaintiff such a title.

6. The request to rule " that the fact that incumbrances existed on the title of the property did not of itself excuse the

plaintiff from making a tender of the amounts due on the notes," was properly denied, as a request founded upon a particular portion of the evidence only, the presiding justice having given sufficient and correct instructions to enable the jury to deal with the whole evidence bearing upon the question whether a tender was necessary.

7. The remaining exceptions to the refusal of instructions relate to the following requests:

" That a demand for the deed and offer to pay the amount due on the notes, to be effective for the purpose of this action, must have been made either upon Mrs. Berry, Mr. C. F. Allen as executor, or upon this defendant."

" That a demand on Mr. Berry, as special administrator or as husband of Mrs. Berry, if any were made, for a deed or title, does not affect the defendant in this action."

" That no legal demand for a deed could be made of Mr. Berry, either as special administrator or personally."

" That all communication with the defendant happening after the letter of November 23, 1884, is not material on the question of the plaintiff's readiness to perform her part of the contract, or her offer to do so."

It would be sufficient to require us to overrule these exceptions, that, while the defendant's bill shows that they were requested and not given, it fails to show either that no instructions were given on the points embraced in the requests, or that correct instructions upon those points were not given. Its statement of the charge is introduced by saying, " The judge charged the jury, among other things, as follows." Under these circumstances it is to be presumed that instructions not stated were given upon the matter to which the requests relate, and that they were correct. We do not, however, overrule these exceptions upon this ground only. The first three are based upon the theory that no demand or offer made on or to Mr. Berry could be material. But Mr. Berry in the lifetime of his wife acted as her agent, after her death was for a time the special administrator of her estate, and is the residuary legatee under her will. The exceptions do not state sufficient facts to enable us to see that no demand upon or offer to him could have been material, and the inference that the contrary doctrine was cor-

rect is strong. The last request is clearly erroneous. Whether a readiness and offer to perform upon the part of the plaintiff, after her letter of November 23, 1884, in which she stated that she had concluded to give up the property, would have put the other party in default or not, communications between her and the defendant after that date would be admissible and material upon the questions of rescission, abandonment, and breach of contract, which were upon trial.

8. The defendant further contends that the plaintiff can maintain no action for money expended on the repair of the property, or for the taxes paid, because of her failure to perform the conditions of her contract, and he argues that the plaintiff cannot recover for repairs or taxes, for the same reason that she cannot recover for payments of purchase money. This reason fails, because the jury has in effect found that there was no failure on the plaintiff's part to perform her agreement. We see no error in this part of the case.

9. The first exception which the defendant argues to the admission of evidence relates to the admission of parol evidence of the contents of a letter which one Smith, called as a witness by the plaintiff, testified that he wrote to Mrs. Berry after he had received a certain letter written by her husband at her request on January 7, 1883. Smith was a real estate agent, who had acted for both the plaintiff and Mrs. Berry. He had negotiated the sale to the plaintiff, and drawn the bond for a deed. He had testified that the plaintiff came to him and wanted to know if she could make repairs, and that, in consequence, he wrote to Mrs. Berry that the plaintiff wanted a title to the property. The defendant's counsel then produced a letter from the witness to Mrs. Berry, dated February 20, 1883, and stated that it was the only letter in his possession. The witness then stated, without objection, the contents of the letter to which he had first testified, and was asked whether he wrote more than one letter to Mrs. Berry, and testified that he did. The plaintiff then introduced a letter to the witness, dated January 7, 1883, written by Mr. Berry at his wife's request, acknowledging the receipt of a letter from the witness on the night before, and saying, " She says go ahead and make the improvements contemplated, and she will make it all right," etc. The witness

was then asked if he wrote at any time again, and answered that he wrote several letters to Mrs. Berry about the property. The plaintiff's counsel then read a notice to produce the letters written in January or February by Mr. Smith to Mrs. Berry, and proposed to put in the contents "of what letters we wrote." The defendant objected, on the ground that Mrs. Berry had never received any such letters, and that no response was produced. Upon this objection the plaintiff's counsel produced a letter from Mr. Berry, written at his wife's request to Smith, dated February 20, 1883, and saying, among other things, "Yours of the 19th is just come to hand, and my wife wishes me to say in reply that she will see that Mrs. Linton has a good title to the place according to agreement. It seems that you did not get my other letter, for I have written the same once before." The defendant's counsel then asked the witness, "You said you wrote two letters?" and was answered, "I wrote more than two letters, for I wrote two letters particularly in regard to the title." The presiding justice then directed the letter of January 7 to be shown to the witness, and asked him whether the letter of his own, produced by the defendant's counsel and claimed to have been written by the witness on February 19, was in reply to Mr. Berry's letter of January 7, or to some other one. The witness answered that it was in reply to some other one, and then gave the contents of his letter to which he said Mr. Berry's of January 7 was in reply. He was then asked, "Did you after that write again another letter?" to which he answered, "I did write several letters to Mrs. Berry," and "Will you please state what you next wrote to Mrs. Berry?" to which he answered, "It was merely a duplicate of what I wrote here [in his letter of February 19] demanding a title." The court then asked, "That was after you had received the letter of January 7 that you wrote again?" and, after an affirmative answer said, "I think that is admissible"; and the defendant excepted. The witness was then asked to state what he said, and replied that he demanded the title, testifying that he could not give it word for word as he wrote it, but that his demand for Mrs. Linton was the title to the property, as he had sold it to her, and that in reply to that letter he received nothing more than the two letters. If there were no evidence tending to

show the receipt by Mrs. Berry of this letter, which the witness testified he had written to her between January 7 and February 19, it is impossible that its admission should have prejudiced the defendant, since the testimony given was that it was merely a duplicate of his letter of February 19, which was produced, and in which he wrote, " All Mrs. Linton wants to know is if you will back her against any claim the Oak Bluffs Company have on the place." But there was some evidence of the receipt of such a letter by Mrs. Berry. In the first place, the witness evidently used the words " write " and " wrote " in their common acceptation, which, as applied to epistolary correspondence, includes as well the sending or mailing of the communication as its mere inditing. In the next place, Mr. Berry's letter of February 20, — after stating in reply to the demand of the letter of the 19th, " All Mrs. Linton wants to know," etc., that his wife wishes him to say in reply " that she will see that Mrs. Linton has a good title to the place according to agreement," — adds, " It seems that you did not get my other letter, for I have written the same once before." This cannot refer to the letter of January 7, since no statement in the two letters is identical. It is a fair inference that the letter of February 20 refers to a letter written by Mr. Berry between January 7 and that date ; and because he says that he has written the same once before, it is also a fair inference that what he had written once before was in reply to the letter which the witness had testified was merely a duplicate of his letter of the 19th, and which thus appeared to have been received and replied to by Mrs. Berry. For these reasons this exception is overruled.

10. Upon cross-examination the same witness was asked if, at the time of the execution of the bond, he said anything to Mrs. Berry about conditions ; and the defendant excepted to the exclusion of the question. He now argues that it was a proper one, because the plaintiff was present at the time, and that conversation in the presence of the parties was competent to show that at the time the plaintiff knew of the conditions on the property. The exception must be overruled. It is not stated in the bill of exceptions that the plaintiff was present, and no mention of that claim was made when the question was excluded. Whether the plaintiff knew of the conditions when the bond was given was immaterial.

11. The remaining exception was to the admission of conversations between the plaintiff and Mr. Berry, occurring on June 30 and July 9, 1884, when he was special administrator, on occasions when she made him payments upon the notes, which he demanded. He was then the sole legal representative of Mrs. Berry, had the right to collect any demands due to her estate, and was the only person to whom the plaintiff could go if she wished to make payment. The will having been established before the trial, it was known that, as residuary legatee, he was at the time of the conversations also seised of the land, and that his conveyance of it at that time would have passed any title of which Mrs. Berry had died seised, subject only to the liability to be devested by a conveyance by an executor or administrator if required for the payment of debts or legacies, or by proceedings under the Pub. Sts. c. 142, § 1, for the specific performance of her agreement to convey. The defendant was contending that the plaintiff had failed to perform her own contract, and the effect of her payments depended upon the circumstances under which they were made.

We think the evidence was competent, as characterizing the acts of payment which they accompanied, and also as tending to show a readiness on her part to perform her own agreement upon a condition upon which she had a right to insist, that is, upon the conveyance to her of a good title. The substance of the conversations was merely that, upon his demand for the payment of the notes, she hesitated, and declared her unwillingness to pay out more money without a good title, and that she would like to pay if he would give her a good title, and, finally, that she would pay no more until she got a title. The exception to its admission must, therefore, be overruled.

Upon the whole case the result is, that, no error appearing upon the consideration of such of the defendant's exceptions as he has chosen to argue, the exceptions must be overruled, and there must be,

*Judgment for the plaintiff on the verdict.*