GEORGE WHEATLAND, JR. *vs.* GEORGE Z. SILSBEE & others, executors.

Suffolk.   March 28, 1893. — May 19, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Purchase of Land on Joint Account — Option — Tender of Purchase Money — Time of Performance — Waiver.*

A. purchased land on the joint account of himself and B., agreeing orally at the time of the purchase to hold it in trust to convey an undivided one half interest therein to B. upon payment by him of one half the purchase money with charges and interest. Subsequently A. executed and delivered to B. a similar written agreement, with the added condition that payment was to be made by B. within A.'s lifetime or within six months after his death. A. died seised of the land, having conveyed no part thereof to B., and more than six months after his death the land was sold by his executors. During A.'s lifetime, both before and after the execution of the written agreement, B. told A. that he had the money to pay for his interest in the land, and desired to pay it and take a deed of the land to himself, to which A. replied that he did not wish the money and preferred to let it lie; and at various times within six months after A.'s death B. expressed to A.'s executors and trustees a similar desire and readiness to pay the money and take a deed, but, as the money was drawing interest, they declined to take it or to give a deed. *Held,* on a bill in equity by B. against the executors and trustees to establish the right of the plaintiff to a one half interest in the proceeds arising from the sale of the land, and for an account, that B. was not obliged to make an actual tender of the money so long as he was able, ready, and willing to take a deed, and was desirous of so doing, and A. had notice thereof; and that A. was in default at the time of his death.

BILL IN EQUITY, filed May 8, 1891, against George Z. Silsbee, Dudley L. Pickman, and William F. Wharton, as executors, and against Dudley L. Pickman, William F. Wharton, and Walter Hunnewell, as trustees, under the will of William D. Pickman, for an account, and to establish the plaintiff's right to one half of the profits arising from the sale of a lot of land which was purchased by the defendants' testator, in his lifetime, on the joint account of himself and the plaintiff.

The bill alleged that during the lifetime of William D. Pickman the plaintiff, who was a dealer in real estate, recommended to Pickman the purchase of an undivided third interest in a parcel of land situated on Boylston Street in the city of Boston; that Pickman said that he should prefer to purchase the land on

the joint account of himself and the plaintiff, and proposed that he himself should advance the money to pay for the undivided third interest in the land, and all taxes, assessments, and expenses paid by him in respect to or on account of such land, taking a conveyance to himself, to hold the land in trust to convey one undivided half of the undivided one third interest to the plaintiff on payment by the latter of one half of the purchase price, together with one half of the taxes, assessments, and expenses, with interest thereon to be compounded annually.

The plaintiff assented to this proposal, and in pursuance thereof Pickman, on November 11, 1879, took a conveyance of one undivided third interest in the land described, paying therefor the sum of $10,154.88, agreeing to hold it on the joint account of himself and the plaintiff, in trust to convey an undivided half interest therein to the plaintiff, when the latter should pay him, or his representatives, one half of the purchase money, together with one half of all taxes, assessments, and expenses paid by him in respect to or on account of the land, with interest thereon compounded annually. The purchase was always treated and spoken of by Pickman as a joint purchase of himself and the plaintiff, and on several occasions he sent persons desirous of purchasing the land to the plaintiff, and at various times when the plaintiff informed Pickman that he had the money, and wished to pay for his interest in the land, and to take a deed thereof to himself, Pickman always declined to take the money or give a deed, saying that he did not wish the money, and preferred to let it lie. On one of these occasions, shortly before December 20, 1888, Pickman, replying as above stated, added: "You," meaning the plaintiff, "have nothing in writing to show your rights; you ought to have one, and I will give you one if you will have it drawn." Thereupon an instrument drawn in accordance with Pickman's suggestion was executed by him, December 20, 1888, and delivered to the plaintiff. The agreement recited, that whereas the land had been bought " on joint account with George Wheatland, Jr.," Pickman covenanted and agreed " with the said Wheatland, his executors and administrators, that if at any time during my life, or within six months after my decease, and while I am or my heirs or devisees are seised of said one undivided third part, he the said

Wheatland, his executors or administrators, shall pay or tender to me or my executors or administrators one half of the purchase money which I paid for said one undivided third part, and one half of the taxes and other assessments which I have already paid or may hereafter be obliged to pay on account of said undivided third part, with interest on all sums so paid by me compounded annually, then I will, and my heirs and devisees shall, remise, release, and quitclaim to the said Wheatland, his heirs and assigns forever, subject, however, in all respects to the agreements, conditions, stipulations, and restrictions contained in the deeds to me above referred to, one half of the said undivided third part, provided, however, and it is expressly understood, that I may at any time upon notifying the said Wheatland in writing of my intention so to do, and upon his failure within ninety days from the receipt of said notice to pay or tender me the sums of money hereinbefore specified, sell the said one undivided third part for such sum and to such purchaser as I may think proper."

Thereafter, on several occasions, when the plaintiff expressed to Pickman his desire to pay for the land and receive a deed, Pickman always declined to take the money or give a deed, and replied in effect as above stated, and at no time did Pickman notify the plaintiff of an intention to sell the land. On February 22, 1890, Pickman died seised of the undivided third interest in the land, and on April 7, 1890, his will was duly admitted to probate, and the defendants were duly appointed as executors and trustees, and qualified as such.

The bill further alleged, that " by the terms and provisions of said will said George Z. Silsbee, Dudley L. Pickman, and William F. Wharton, in their capacity as such executors, together with said Dudley L. Pickman, William F. Wharton, and Walter Hunnewell, in their capacity as such trustees, or said executors or said trustees, are seised of said undivided third of said lot of land, and hold it clothed with and subject to the same trust as said William D. Pickman held it during his life and at his death, viz. to convey it to this plaintiff subject in all respects to the same agreements, conditions, stipulations, and restrictions as said William D. Pickman held it to convey to the plaintiff, upon the plaintiff paying to them one half of the purchase

price said William D. Pickman paid for said undivided third of said lot of land, and one half of the taxes and assessments said William D. Pickman during his life, or the defendants or any of them, have or are held to pay on account of said undivided third part of said lot of land, with interest thereon compounded annually."

The bill further alleged that on May 16, 1890, the plaintiff informed the defendant Hunnewell, as trustee, that he owed the estate of Pickman on account of a purchase of land, and was ready to pay it, but that Hunnewell denied any knowledge of the matter, and referred the plaintiff to the defendant Silsbee, one of the executors; that in an interview with Silsbee, in which the plaintiff expressed his readiness to pay the money, Silsbee inquired if the money was drawing interest, and, on learning that it was, replied that he did not want it; and at another time he said that he could find no entry relating to the matter in Pickman's books, to which the plaintiff replied that he had a paper showing the whole transaction, and offered to show it to Silsbee, but the offer was declined.

In March, 1891, the defendant Hunnewell asked to see the agreement, and was given a copy of it by the plaintiff.

The bill concluded as follows:

" 21. The plaintiff has asked the defendants to render him an account of all taxes and assessments which said William D. Pickman or they have paid or are held to pay on account of said undivided third of said lot of land, and told them that he had the money ready to pay, and that he desired to pay one half thereof and receive a deed to himself of one half of said undivided third of said lot of land, and has requested the defendants to convey to him one half of said undivided third of said lot of land, and perform their trust hereinbefore set forth; but the defendants have refused and still refuse so to do, and have refused and still refuse to comply with the said reasonable and rightful requests of the plaintiff.

" 22. The plaintiff prays that a subpœna may issue to the defendants, commanding them at a day certain therein to be named to appear in this court, and full, true, and perfect answer make to all and singular the premises, and to stand to, perform, and abide such order and decree therein as to your honors shall

seem meet; and for such other relief as in the judgment of your honors justice and equity may require.

" 23. The plaintiff further prays that the defendants and each of them may be restrained, by a preliminary injunction issuing out of this court, from conveying to any person or party other than the plaintiff said one half of said undivided third of said lot of land during the pendency of this bill, and all proceeding thereon or thereunder."

By the seventh clause of Pickman's will he gave the residue of his estate to Dudley L. Pickman, William F. Wharton, and Walter Hunnewell, their heirs, administrators, executors, and assigns, in trust, after deducting all proper charges and expenses, to pay the residue of the income to his wife, Caroline Pickman, during her life, and after her decease to his son Dudley L. Pickman and his son in law William F. Wharton in equal shares during their lives, and at the death of either to convey one half the principal to the issue of his son, or grandson, or if no issue, as his son or grandson might by will direct, or if no will, to his heirs at law.

By the ninth clause he authorized and empowered his trustees to change any investments held by them, to sell and convey any real estate and personal property held in trust in such manner as they might judge best, and to invest the proceeds of such sales in any other real estate or personal property, and to make such exchange and to sell at public auction or private sale for such consideration and on such terms as they should deem expedient.

By the tenth clause he appointed George Z. Silsbee, William F. Wharton, and Dudley L. Pickman executors of his will, and empowered them to sell and convey any of his real estate or personal property at public or private sale.

The defendants demurred to the bill, on the grounds that the plaintiff did not state a case which entitled him to relief in equity; that it did not appear that the plaintiff ever paid or tendered to William D. Pickman during his lifetime, or to his executors within six months after his death, one half of the purchase money, nor one half of the taxes and other assessments paid by Pickman on account of the land in question, nor the interest on the sums so paid; that it did not appear that Pickman in his lifetime, or his executors or trustees within six

months after his death, ever neglected or refused to render an account of the sums due from the plaintiff, or to execute a conveyance to him, or that the plaintiff within that time ever requested them so to do, or tendered to them any conveyance for execution; that it did not appear that Pickman in his lifetime, or his executors within six months after his death, ever waived or excused such payment or tender, nor had they any power or authority so to do, and that any pretended or supposed waiver made by them was null and void; that the plaintiff does not by his bill pray for an account or conveyance from the defendants, and does not aver that he is able, ready, or willing to pay any money that may be found due from him on an accounting.

Before the demurrer was heard, the bill was amended by inserting at the beginning of the 21st paragraph the words: " And the plaintiff has duly tendered to the defendants all sums of money due from him to pay for his said interest in said land, and requested from them a conveyance thereof to him; and this plaintiff is now ready and willing and desirous to pay all such sums and take such conveyances "; and by inserting after the word " premises " in the fourth line of the 22d paragraph the words: " to render an account of the sums to be paid by him for purchase money, interest, taxes, and assessments under exhibit six annexed to this bill to entitle him to a conveyance of the undivided portion of real estate named therein." And it was agreed that the demurrer already filed should stand, so far as applicable, as a demurrer to the bill as amended.

The demurrer was sustained, and the bill dismissed; and the plaintiff appealed to the full court. This decree was afterwards vacated by the full court, to allow the plaintiff to apply to a single justice for leave to further amend his bill. The amendment was allowed, and the bill as amended by the addition of three new paragraphs stated, in substance, that there was a large and increasing demand for the land in question after its purchase by Pickman, and that the market value began to advance immediately thereafter, and continued to advance; that there was a large profit assured on account of the joint venture; that numerous offers for the purchase of the land were from time to time made to Pickman and the plaintiff which would have afforded a large profit, and that Pickman and the

plaintiff were offered, shortly before the execution of Pickman's agreement, more than threefold the original cost of the land, and that that price could have been readily obtained at the time of the execution of Pickman's agreement, but that Pickman and the plaintiff, upon consultation, refused all offers, upon their expectation that the price would still further advance; that the plaintiff was abundantly able to pay for his share of the purchase, with charges and interest as required, at all times after it was made, as Pickman well knew, and that on every occasion when the plaintiff proposed to Pickman or to Hunnewell or to the executors to make such payments he was able and ready to do so, but relied upon the statements of Pickman and his executors that payment was not desired, and upon their refusals to accept payment, and that his failure to make such payment was wholly due to such statements and refusals; that Pickman during his lifetime, and his executors since his death, and within six months thereof, by their acts have waived such payment, and have waived the tender of the money due from the plaintiff, and any condition or stipulation as to time which may have been contained in Pickman's agreement of December 20, 1888; that the plaintiff is entitled to one half of the profits of the joint venture (less such sums as are to be paid by him) whenever such profits might be realized, without any condition or limitation as to time; that the defendants are now estopped from disputing the plaintiff's rights and interest in the land and the proceeds thereof; that on January 16, 1892, since the filing of the original bill in this case, the defendants have sold the land, and have realized a large profit therefrom, and that the plaintiff's portion of the profits, after the payment of all sums with which he is chargeable, is very large; that the defendants refuse to pay the plaintiff any part thereof, and deny his right or interest in such profits, and refuse to account with him, although he is, and always has been, ready to pay all sums due from him on account of the joint venture, and has duly tendered the same to the defendants.

The prayer of the bill was that the defendants should account for all their dealings with the land in question, and that the plaintiff might be decreed to be entitled to one half interest in all the profits, upon payment of such sums as were due from him on such account.

Hearing on the bill as amended and the demurrer, before *Allen*, J., who overruled the demurrer.

The defendants appealed to the full court, and having stated to the presiding justice that they did not intend to answer, he, at their request, reported the case for the consideration of the full court.

If the decree overruling the demurrer was affirmed, a final decree was to be entered for the plaintiff for the sum of $11,256.19 (being an amount agreed by the parties), with interest from February 15, 1892, and costs ; but if the demurrer should be sustained, a decree should be entered dismissing the bill.

*H. W. Swift*, for the defendants.

*J. B. Warner*, for the plaintiff.

MORTON, J.   We think it does not matter whether the agreement of December 20, 1888, be construed as the defendants contend it should be, — as giving to the plaintiff only an option to purchase, — or as constituting, as the plaintiff contends, a joint venture on the part of the defendants' testator and the plaintiff. If it was an option, then the plaintiff, according to the allegations contained in the bill as originally filed and as amended, exercised during the testator's life the right to purchase which the agreement gave him.   The bill alleges that, several times after the agreement was executed and delivered to the plaintiff by Pickman, the plaintiff told Pickman that he had the money to pay for his half, and that he wanted to do so and take a deed of it, but that Pickman declined to take the money and deliver the deed, saying that he did not wish the money, and preferred to let it lie.   The amendment alleges that the plaintiff was abundantly able at all times, as Pickman well knew, to pay his share of the purchase price, with interest and charges ; that he relied upon Pickman's statement that payment was not desired ; and that his failure to make payment was due to such statement and refusal.

The purport of these allegations is, that the plaintiff was able to take and pay for the deed, as Pickman knew, and was desirous and offered to do so, but that the defendants' testator declined to take the money and deliver the deed ; or, in other words, that the plaintiff availed himself of the right to purchase, and offered and was able to do what the agreement required him

to do, but the defendants' testator declined to receive the money and deliver the deed. Upon these facts it is clear that Pickman was in default at the time of his death. The plaintiff was not obliged to make an actual tender of the money so long as he was able, ready, and willing to take a deed, and was desirous to do so, and Pickman had notice thereof. *Linton* v. *Allen*, 154 Mass. 432, 439. *Brown* v. *Davis*, 138 Mass. 458. *Cook* v. *Doggett*, 2 Allen, 439. The plaintiff's yielding for the time being, at each effort to get a deed, to Pickman's desire not to take the money and to let it lie, did not affect the plaintiff's rights. The delay was at Pickman's request, and without consideration, and there was nothing to prevent the plaintiff from bringing suit at any time when he chose to do so.

*Decree affirmed.*