E. O. DOSCH and Others v. EARLE F. ANDRUS and Another.[1]

June 24, 1910.

Nos. 16,654—(89).

**Contract to sell land — defect in title.**

Defendants by written contract agreed to convey land to plaintiffs, who paid defendants $1,000 earnest money. On examination of title it appeared a right of way had been reserved across the land by a railway company, which had also, in conveying the land, done so by two deeds executed upon the same day to the same grantee, and each for an undivided half. A written demand was made for a quitclaim or other deed from the railway company.

**Reservation.**

The written contract made no mention of the reservation, and defendants were bound to give plaintiff a good title.

**Refusal to perform.**

The reservation of the right of way constituted a substantial defect, which, if not cured or waived, justified plaintiffs in refusing to perform.

**Defect in title — evidence.**

The evidence was not sufficient to justify a finding that the curative deed demanded was not desired to remedy the defect caused by the reservation, but only to remove a doubt as to the sufficiency of the two prior deeds of the railway company to convey the entire property. It was error, there-

[1] Reported in 126 N. W. 1071.

fore, to permit the jury to so limit the scope of the demand, and find a waiver as to the reservation.

**Damages for breach.**

If a party to an executory contract renounces it, tender of performance by the other party is generally unnecessary; but, in order that such other may recover damages for a breach, he must show ability to perform on his part.

Action in the district court for Ramsey county by E. O. Dosch and five others against Earle F. Andrus and E. M. Zuel to recover $1,000, earnest money paid upon an application for the purchase of certain land and $100 for personal expenses incurred in connection therewith. The defendants in their answer alleged a waiver of the defects mentioned in the opinion and an agreement to take the land notwithstanding the reservation, and interposed a counterclaim for $2,900, the amount of their lost profits. The case was tried before Bunn, J., who denied motions for instructed verdicts. The jury returned a verdict in favor of defendants. From an order denying plaintiffs' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Reversed and new trial ordered.

*Harold Harris* and *Masters, Graves & Masters,* for appellants.

*A. R. Pfau, Jr.,* and *C. J. Laurisch,* for respondents.

O'BRIEN, J.

On August 16, 1907, the parties entered into a contract by which plaintiffs agreed to purchase and defendants to sell the south half of a section of land in Bayfield county, Wisconsin. Simultaneously with the execution of the contract, plaintiffs paid defendants $1,000 on account. The contract contained a provision that if, on examination, the title proved defective, defendants should only be liable for the return of the amount paid or obligation given. It appeared upon examination the Chicago, St. Paul, Minneapolis & Omaha Railway Company acquired title to the land by a patent from the state of Wisconsin, and by mesne conveyances title had passed to Long & O'Toole. The railway company had conveyed the tract by two deeds, both executed on the same day to the same grantee, and each for an undivided one-half of the tract. In the second a

strip one hundred feet in width was reserved for right of way. One of the intermediate grantors reserved the mineral rights. The abstract was, at the direction of plaintiffs, finally submitted to Higbee & Higbee, attorneys, of La Crosse, Wisconsin, who rendered the following opinion:

"In order that the abstract indicate a title in Long & O'Toole, it will be necessary to show: (A) A quitclaim or other deed from the Chicago, St. Paul, Minneapolis & Omaha Railway Company. (B) A quitclaim deed from Grove E. Hart and the Northern Land & Realty Company, together with a relinquishment of the land contract mentioned in number 10 of the abstract; original contract to be attached. (C) A certificate from the clerk of the circuit court covering the statements in numbers 11 and 12, which said certificate should specifically state that there are no judgments against the Chicago, St. Paul, Minneapolis & Omaha Railway Company, the White River Lumber Company, Frank M. Long, John O'Toole, Northern Land & Realty Company, and Grove E. Hart."

On October 12 defendant Andrus wrote to Higbee & Higbee, stating that he had complied with all of their requirements, with the exception of the deed from the railway company, and suggesting a waiver of that requirement, but saying further: "If you still deem it a matter of vital importance, we will endeavor to obtain this quitclaim from the Omaha, and wish at the same time that you would write us your reasons for making this request." On October 15 Higbee & Higbee wrote defendant Andrus, on behalf of the plaintiffs, stating that plaintiffs had found the lands misrepresented to them, "and for this reason, and the further reason that you have failed to perfect the title to said lands, they withdrew their application for the purchase thereof, and demand that you repay them the sum of $1,000 which has been paid upon said contract." Andrus replied, denying the claims of plaintiffs as recited in the letter of Higbee & Higbee, excepting the deed already referred to. On November 14 E. C. Higbee wrote to defendant Andrus, informing him of instructions received to commence suit unless settlement was made. Andrus replied again, reiterating his position, and nothing

111 M.—19.

further seems to have been done until some time later, when the following communications were exchanged:

"To Earle F. Andrus:

"You will please take notice that we, the undersigned, have and do hereby rescind the contract made and entered into with you on the 16th day of August, 1907, for the reason and upon the grounds:

"First. That the condition and situation of the lands therein mentioned and the amount of timber thereon were misrepresented by your agent who procured the making of said contract.

"Second. For the reason that you have no title to said lands, as is shown by the records in the office of the register of deeds for the county of Bayfield, Wisconsin.

"Third. That the deed under, through, and by virtue of which you claimed to have title to said lands reserves a right of way to the Chicago, St. Paul, Minneapolis & Omaha Railway Company one hundred (100) feet wide over and across said lands, and reserves to the White River Lumber Company all minerals and mineral rights in said lands.

"And we hereby demand that you cancel and deliver up said contract and repay to us the sum of one thousand dollars ($1,000) paid by us to you thereon.

"G. P. Basenach.
"J. E. Berg.
"F. J. Rudolph.
"E. O. Dosch.
"T. Senz.
"Thomas Cole."

"St. Paul, Minn., February 29, 1908.

"Messrs. G. P. Basenach, J. E. Berg, F. J. Rudolph, E. O. Dosch, T. Senz, and Thomas Cole, Cashton, Wisconsin.

"Gentlemen:

"We have received your written notification, without date, to the effect that you rescind the contract of August 16, 1907, therein referred to. We beg to say in answer:

"1. That there was no misrepresentation on our part, or on the

part of any agent of ours, in reference to the matters you mention, or any other matters. The conditions and situation of the lands and the amount of timber thereon were fully known to you when you made the contract, and if any opinions in reference to these things were expressed by us, or any agent of ours they correspond in all respects to the truth.

"2. That you had the title to the property examined and made certain requisitions on us, with which we complied at once. We have at all times been ready to convey the land by good title on your performing your part of the contract.

"3. That the reservation of right of way and mineral rights were fully understood by you at the time you signed the contract, were waived by you, and never included in any requisitions made by you.

"We feel that you should fulfil your contract according to its terms, and we propose to hold you liable for your failure to do so. We write this in all friendliness and with an ambition to settle this matter, in which we think we have been very badly treated.

"Yours truly,

"[Signed]    E. F. Andrus."

Although denied by plaintiffs, there was some evidence that before entering into the contract they were informed as to the reservations of the right of way and mineral rights. In addition, a witness named Frink, who throughout the transaction acted as defendants' agent, testified that he, in company with one Brody, who was then considering either the purchase of the north one-half of the same section or becoming interested with the plaintiffs in their purchase, presented the abstract to Mr. Higbee, who upon examination commented upon the reservations, and was thereupon informed by Mr. Brody that plaintiffs knew of and had waived them (Frink corroborated Brody's statement); that thereupon Mr. Higbee insisted upon requiring a deed from the railway company to remove any doubt which might exist as to the purpose and effect of the two deeds, each for an undivided half, but apparently executed simultaneously. From this the defendants claimed the defect caused by

the reservations had been waived, and that the quitclaim deed was unnecessary for the purpose for which it was demanded.

This claim was submitted to the jury, and in doing so the court said:

"There can be no doubt that this reservation of a right of way across these lands by the Omaha Company was a defect in this title, and if the plaintiffs did not know about it, and it did not occur to them at that time that they had the right to insist that that defect be cured by quitclaim deed from the Omaha Company, and if the defendants failed or refused to cure that defect, they had the right to refuse to perform their contract and to recover back the earnest money paid; but I think the contrary is true, gentlemen, and if the plaintiffs knew of this reservation of the right of way at the time they made this application, if they, or Mr. Higbee, in their behalf, when he made this specification, did not intend to demand of the defendants that they procure a conveyance of the right of way from the Omaha Company, then there was no defect in this title that would give the plaintiffs any right to refuse to perform this contract. * * *"

Again: "What did Mr. Higbee, acting for the plaintiffs, as you must consider that he was acting for the plaintiffs, intend when he demanded of the defendants a quitclaim deed, or other deed, from the Chicago, St. Paul, Minneapolis & Omaha Railway Company? Did he intend that they should procure a deed conveying this right of way, or only a deed straightening out this supposed defect arising from the two deeds of the undivided halves?" Defendants had a verdict, and plaintiffs appeal from an order denying a new trial.

There is no doubt that the vendee named in a contract to purchase may waive a defect in the title of the thing to be purchased, as well as compliance upon the part of the vendor with any other condition of the contract. If the waiver is shown by competent and sufficient evidence, a failure to perform, even if subsequently demanded, does not amount to a breach of the contract, particularly where the situation of the parties has been changed, or the vendor has been put to expense in reliance upon the waiver. Booth v. Ryan, 31 Wis. 45; McLennan v. Prentice, 85 Wis. 427, 55 N. W. 764; Bigler v.

Morgan, 77 N. Y. 312; Gray v. Smith, 83 Fed. 824, 28 C. C. A. 168; Hartley v. James, 50 N. Y. 38; Linton v. Allen, 154 Mass. 432, 28 N. E. 780; Blood v. Shannon, 29 Cal. 393; 29 Am. & Eng. Enc. (2d Ed.) 676.

Following these authorities, we think the trial court was justified in instructing the jury that the plaintiffs must be held to have waived any defect in the title, except such as could be remedied or performed by the execution and delivery of a conveyance from the railway company; but we are unable to concur in the view that there was evidence sufficient to justify the court in permitting the jury to find that the demand for the deed was prompted solely by a desire to remove any doubt arising from the title of the railway company being derived through two deeds instead of one, and to conclude upon that theory that the reservation of the right of way was waived.

While there was a dispute in the evidence concerning the information given the plaintiffs as to the condition of the title prior to the execution of the contract, the agreement to purchase and sell, having been reduced to writing and signed by the parties, is controlling. This written contract, which cannot be contradicted or varied by parol evidence, bound the defendants to convey a clear title. As correctly held by the learned trial judge, the reserved right of way was a substantial defect in defendants' title. Steiner v. Zwickey, 41 Minn. 448, 43 N. W. 376; George v. Conhaim, 38 Minn. 338, 37 N. W. 791; Adams v. Henderson, 168 U. S. 573, 18 Sup. Ct. 179, 42 L. Ed. 584; Taft v. Kessel, 16 Wis. 291; Johnston v. Callery, 184 Pa. St. 146, 39 Atl. 73; Sugden, Vendors, 473. The deed demanded in the first Higbee letter would have cured the defect. The evidence fails to show that the demand made in that letter was ever withdrawn or modified, or that the condition which the deed was required to remedy was only that claimed by defendants. Certainly the execution of the deed was never waived.

The only evidence offered to show what defect the plaintiffs' attorney proposed to cure was that of the witness Frink. He stated the attorney was informed by Brody and himself that the plaintiffs had waived the reservation of the right of way; but there was no testimony to show that either Brody or Frink were authorized by

plaintiffs to make any such statement. The letter or opinion of Higbee & Higbee was sufficient to cover both points, a very likely course for an attorney to take when he has no opportunity of consulting his client. In addition to this, the defendant Andrus, when returning the abstract to the attorney, requested that he waive the deed, and asked him to explain his purpose in demanding it. The subsequent communications between the parties fail to show any relinquishment of the demand made by Higbee & Higbee, or that the defendants incurred any appreciable expense or liability in reliance upon the interpretation the jury were permitted to give the Higbee letter. We have, then, this case: A written contract for a clear title, a substantial defect, and a written demand for a deed, which, if complied with, would have cured the defect, no subsequent withdrawal of the demand, and a failure upon the part of the vendor to furnish the deed. Upon those facts the plaintiffs were entitled to recover.

It is urged by defendants that, plaintiffs having notified them they would not perform their contract, no tender by defendants was necessary. This is probably true, but defendants are still bound to show their ability to perform, i. e., give a clear title. There was no attempt made to do this. Bigler v. Morgan, supra; Gray v. Smith, supra; Hartley v. James, supra; Linton v. Allen, supra.

We conclude that under the evidence it was error to permit the jury to limit the scope of the demand in the manner indicated, and in the absence of evidence showing a waiver by plaintiffs of the railway reservation, made by them after the execution of the contract, they are entitled to recover.

Order reversed, and a new trial ordered.