## M. SEERUP v. JOE GORACZKOWSKI.[1]

May 23, 1924.

No. 23,809.

**Vendee repudiated contract of sale before time for performance by vendor.**
    1.   The evidence sustains the finding of the jury that the defendant, the vendee in a contract of sale, repudiated and breached the contract prior to the time of performance by the vendor.

**Vendor did not cancel contract.**
    2.   The evidence sustains the finding that the plaintiff did not surrender or cancel the contract of sale.

**Vendor need not obtain satisfaction of mortgage before time for closing sale.**
    3.   The vendor, under a contract of sale requiring him to furnish abstract showing merchantable title and to convey by warranty deed, may pay mortgages upon the property out of the cash payment made by the vendee when the contract is closed.   He is not required to pay them before the closing day and record satisfactions so that the abstract will show title free of encumbrances.   The plaintiff had title. There was a small mortgage not yet due upon the property.   The mortgagee would have accepted payment at any time and the plaintiff could have paid it out of the purchase money.   At the time fixed for the closing of the contract, he did not have a satisfaction in his

[1]Reported in 199 N. W. 94.

possession. Some days before the defendant had repudiated and refused to proceed with the contract. Under these circumstances the plaintiff was not prevented from recovering damages because he did not have a satisfaction of the mortgage in hand at the time fixed for closing.

**In vendor's action for breach of contract, purchaser cannot recover differential damages.**

4. In his answer the defendant counterclaimed for damages for a misrepresentation as to the maturity dates of certain mortgages which were to be assumed. There was evidence of such misrepresentation. The defendant not having rescinded for fraud, having repudiated and breached his contract, and having refused to perform, cannot recover as damages the difference between what he was to give and what he would have received.

Action in the district court for Martin county to recover $2,600 for breach of contract. Defendant interposed a counterclaim for $6,000. The case was tried before Dean, J., who, when plaintiff rested denied defendant's motion to dismiss the action, and at the close of the testimony denied a motion by each party for a directed verdict, and a jury which returned a verdict in favor of plaintiff for $2,000. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Allen & Allen*, for appellant.
*Haycraft & McCune*, for respondent.

DIBELL, J.

Action to recover damages for the breach by the defendant of a contract to purchase a farm from the plaintiff. There was a verdict for the plaintiff and the defendant appeals from the order denying his alternative motion for judgment or a new trial.

1. On June 7, 1920, the plaintiff as vendor and the defendant as vendee entered into a contract for the sale and purchase of a quarter section farm for $26,000. The contract was to be closed on March 1, 1921. There was paid $1,000 in cash, $8,600 was to be paid on March 1, 1921, and $16,400 was to be paid by the assumption of

mortgages of that amount then upon the property. On August 9, 1920, the defendant assigned his interest in the contract to his brother-in-law, Peter Pytleski, who then moved upon the land. His mistaken understanding was that by his assignment to Pytleski he relieved himself of liability to the plaintiff on the contract. Just prior to the time when performance became due he refused to perform. He told the plaintiff that he would not. There is no misunderstanding his position. He insisted that the plaintiff must deal with Pytleski. He told him he was "dealing for another place," and "didn't have the money to go through with this." The question of the repudiation of the contract was submitted to the jury. The general verdict for the plaintiff is a finding of a repudiation as claimed. The finding is sustained. A different one hardly could be.

2. Some time later the plaintiff sold the farm to John Pytleski, a brother of Peter Pytleski. Before closing the latter obtained a quitclaim deed from the defendant. The defendant claims that when the sale was closed there was by mutual agreement a surrender and cancelation of the contract between him and plaintiff. This issue was submitted to the jury. The testimony of the parties is in conflict. The jury's verdict is a finding that there was no surrender or cancelation, and it is sustained by the evidence.

3. The plaintiff had title which he was in position to convey. Aside from the mortgages aggregating $16,400, which the defendant was to assume, among which was one for $9,000, there was one for $223, not yet due on March 1, 1921, when the contract was to be closed. It is referred to as a commission mortgage connected with the $9,000 mortgage. The application was for a loan of $9,000 at 6 per cent. The $9,000 mortgage was written at $5\frac{1}{2}$ per cent and the $\frac{1}{2}$ per cent difference was the broker's commission and was represented by the $223 mortgage which was junior to the $9,000 mortgage. As we understand it this mortgage was payable in yearly instalments which did not bear interest until maturity. There was of record a $5,000 mortgage made by the plaintiff to one Niemeyer after the contract of sale. It was understood between them that this mortgage was to be paid out of the cash payment of $8,600.

It is the law of this state, when the contract is to furnish an abstract showing merchantable title and to convey by warranty deed, that mortgages resting upon the vendor's title may be paid out of the cash payment to be made when the contract is closed and that it is not necessary that the vendor pay them before the time to close comes and record satisfactions so that the abstract will show title free of encumbrances. Johnson v. Herbst, 140 Minn. 147, 167 N. W. 356; Lynch v. Higgins, 154 Minn. 151, 191 N. W. 422; Lutz v. Fults, 155 Minn. 207, 193 N. W. 119; McChesney v. Oppek, 156 Minn. 260, 194 N. W. 882. This much is conceded to the convenience and necessity of the situation.

In 2 Williston on Contracts, § 882, the rule as to the effect of a repudiation by the vendee before the coming of the time for performance is stated:

"Therefore, a vendor of real property desiring to claim a forfeit deposited by the other party to a contract for the sale of such property, is not excused from showing that he was prepared (or would have been) to perform on his side by the fact that the purchaser repudiated his obligation before the time for completing the transfer."

And again in section 884:

"Even though the plaintiff had acquired a complete right of action on the failure of the defendant to perform as agreed, the right will be lost if subsequent events prove that the plaintiff could not or would not have performed even if the defendant had performed."

In Dosch v. Andrus, 111 Minn. 287, 126 N. W. 1071, where the vendees, who had repudiated the contract, sought to recover the purchase money paid, and the vendors counterclaimed for damages for loss of profits, it was held that as a condition to recover the vendors, though not required to tender a deed, were "still bound to show their ability to perform, i. e., give a clear title." This litigation appears again in Dosch v. Andrus, 116 Minn. 190, 133 N. W. 480. That no tender is necessary after repudiation is clear. Matteson v. U. S. & C. Land Co. 103 Minn. 407, 115 N. W. 195; Johnston v. Johnson, 43 Minn. 5, 44 N. W. 668.

The issue of the plaintiff's willingness and ability to perform was submitted to the jury and its general verdict necessarily includes a finding in the affirmative. The plaintiff was not prepared with a satisfaction on the day for closing the deal. To that extent he was not ready. There would have been no difficulty in closing had the defendant not repudiated. He could have had the land. He did not want it. Speaking of the plaintiff, and using the words of Professor Williston, "he was prepared (or would have been) to perform."

One object of the rule requiring a showing of readiness and ability to perform is to provide against a speculative vendor getting damages upon his vendee failing to perform, either because of inability or unwillingness, when he himself cannot perform. Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. 736. While a vendor may not recover damages upon his vendee's repudiation unless he is himself able to perform, we take it the rule does not go so far as to require the vendor to have ready for delivery a satisfaction of a mortgage such as the $223 mortgage under circumstances such as we have before us. The mortgagee's place of business was at Mason City, Iowa, some 90 miles away. There was direct communication by telephone, telegraph, mail and railroad. The evidence indicates that the money would have been accepted at any time and a satisfaction of the mortgage given. It should not be held, under such facts, that the plaintiff, having a good title, with no troublesome encumbrance except the $223 mortgage, and no trouble about that except that it was not due and a satisfaction had not been procured, should lose his cause of action for damages because he did not have a satisfaction in hand at the closing day after the defendant's definite repudiation. The case of McChesney v. Oppek, 156 Minn. 260, 194 N. W. 882, involved a rescission by the vendee, one of the grounds being that the vendor was not in position to convey the title at the time agreed because of an unsatisfied mortgage. The vendee sought to recover the first payment which he had made. There had been no refusal to perform on his part. It does appear, however, that he was not able to perform. It was considered that he was not in default and that the defendant did not and could not put him in default.

In connection with the quotations from 2 Williston, Contracts, §§ 882, 884, the following cases may be noted: Gray v. Smith, 83 Fed. 824, 28 C. C. A. 168; Bigler v. Morgan, 77 N. Y. 312; Wells v. Page, 48 Ore. 74, 82 Pac. 856, 3 L. R. A. (N. S.) 103; Catlin v. Jones, 52 Ore. 337, 97 Pac. 546; Peck v. Brighton Co. 69 Ill. 200; Gerli v. Poidebard Silk Mnfg. Co. 57 N. J. Law, 432, 31 Atl. 401, 30 L. R. A. 61, 51 Am. St. 611.

4. The defendant counterclaims for damages, alleging fraudulent representations made by the plaintiff as to the due dates of the mortgages which he was to assume. The defendant claims that the plaintiff represented the first mortgage was due in 3 years from March 1, 1921, the second in 5 years, and the third in 6 or 8 years. The first mortgage matured on March 1, 1922, the second on March 1, 1923, and the third on April 1, 1924. The defendant claims that the property would have been worth $26,000, the sum he agreed to pay for it, had the mortgages matured as represented and that its value was only $20,000 with the mortgages as they were. It is not easy to understand just why there should be such a depreciation. It is the allegation of the answer, and the defendant's testimony is in accordance with it. That such a difference in maturity dates might materially and unfavorably affect one purchasing is apparent, and there is substantial evidence that the misrepresentation was made.

The defendant assigned his interest in the contract to Pete Pytleski for $1,160, that is, $1,000 which he had paid, and one dollar an acre besides. The defendant did not perform. He repudiated and breached his contract. He did not rescind for the fraud practiced. Not having performed he is in no position to recover damages for the misrepresentation measured by the difference between the value of what he would have received, if he had performed, and what he was to give. Olson v. Northern Pacific Ry. Co. 126 Minn. 229, 148 N. W. 67, L. R. A. 1915F, 962; Freeman v. Fehr, 132 Minn. 384, 157 N. W. 587. Whether he might have rescinded, had he not sold, and recovered his $1,000, is a question not before us; nor do we find it necessary to a decision to consider the effect of his sale to Pytleski upon a right to recover if otherwise he had it.

Counsel for the defendant insistently urge the points which we have discussed, and some others, and thoroughly present their case. We have examined all of the authorities presented and all the claims made. No points other than those discussed seem to call for discussion. The jury might have been more definitely instructed, but no specific instructions were asked. Only one exception was taken at the time, and that upon a matter not now important. The verdict should stand.

Order affirmed.