WAYNE, Appellant, v. BUTTERFIELD et al, Respondents.

(210 N. W. 663.)

File No. 5878.     Opinion filed November 15, 1926.)

1.  Tenancy in Common—Principal and Agent—Estoppel—Evidence
    Held to Show [That Owners Accepted Benefits of Co-owner's
    Contract to Convey Farm to Order of Himself and Another,
    With Full Knowledge Thereof, and Hence Were Bound There-
    by.

    Evidence held to show that two owners of farm accepted bene-
    fits of third owner's contract to convey it by blank deed, placed
    in escrow, subject to his and another's order, with full knowl-
    edge thereof, and hence were bound thereby, though they never
    saw or talked with fourth party.

2.  Specific Performance—Contracts.

    Specific performance of oral contract to convey land may be
    enforced under Rev. Code 1919, § 856, after payment of
    price and entry into possession by purchasers.

3.  Vendor and Purchaser—Time.

    Law implies that contract fixing no time for conveyance
    of land thereunder shall be performed on demand within rea-
    sonable time.

4.  Vendor and Purchaser—Rescission—Vendee, to Repudiate Con-
    tract and Recover Sums Paid, in Absence of Fraud, Must
    Show Vendor's Unwillingness or Inability to Perform or Com-
    mission of act Warranting Rescission.

    In absence of fraud or misrepresentation, vendee of realty,
    to repudiate contract and recover sums paid on purchase price,
    must show vendor's unwillingness or inability to perform or
    commission of act entitling vendee to rescind.

5.  Vendor and purchaser—Notice—Evidence Held to Show Con-
    structive Notice of Existence of Blank Deed, Precluding
    Vendee From Denying Its Validity and Recovering Money
    Paid After Reselling Land.

    Evidence held to show constructive notice to vendee of exist-
    ence of blank deed in escrow, subject to his and another's
    control and order, so as to preclude him from asserting its

invalidity and recovering money paid, after accepting deed, selling land to another, and receiving full price for his interest.

6. **Vendor and Purchaser—Vendee Making Improvements and Paying Taxes and Interest, Held Not Entitled to Recover Purchase Money or Money Expended From Vendors Able and Willing to Perform.**

Vendee, making improvements and paying taxes and interest as owner, for his use and benefit only, held not entitled to recover any of purchase price paid or money expended from vendors, able and willing at all times to perform their part of contract.

7. **Vendor and Purchaser—Evidence of Value of Securities Given in Payment by Purchaser From Vendee Held Properly Excluded in Latter's Action Against His Vendors for Money Paid.**

In vendee's action for purchase money paid, evidence of value of securities, given in part payment for land by one to whom he subsequently sold his interest, held properly excluded, especially as defendant vendors, other than plaintiff's vendee, were not connected with subsequent sale.

---

Note.—See. Headnote **(1)**, American Key-Numbered Digest; Tenancy in common, Key-No. 55(6), 38 Cyc. 106, 123 (Anno); **(2)** Specific performance, Key-No. 43, 36 Cyc. 654; **(3)** Vendor and purchaser, Key-No. 75, 39 Cyc. 1332; **(4)** Vendor and purchaser, Key-No. 334(1), 39 Cyc. 2001 (Anno); **(5)** Vendor and purchaser, Key-No. 341(3). 39 Cyc. 2067; **(6)** Vendor and purchaser, Key-No. 334(1), 39 Cyc. 2001 (Anno), 2076 (Anno); **(7)** Vendor and purchaser, Key-No. 341(3), 39 Cyc. 2066.

Reasonable time to perform contract in absence of contract provision, see 27 R. C. L. 422; 3 R. C. L. Supp. 1513.

On right of vendee in contract for sale of real property to recover payments where vendor is at fault, see note in L. R. A. 1918B, 553; 27 R. C. L. 623; 4 R. C. L. Supp. 1762; 5 R. C. L. Supp. 1479.

Appeal from Circuit Court, Beadle County; HON. ALVA E. TAYLOR, Judge.

Action by Larmie Wayne against V. H. Butterfield and others. Judgment for defendants, and plaintiff appeals. Affirmed.

*Null & Royhl, Crawford & Crawford* and *Gardner & Churchill,* all of Huron, for Appellant.

*C. A. Kelley.* and *Dick Haney,* both of Huron, for Respondents.

SHERWOOD, J. This complaint sets forth two causes of action: First, to recover $10,320 for money had and received by

defendants; second, to recover $3,666.24 for money paid to defendants, and at their instance and request paid out for defendants' use and benefit.

The answer is quite long, and, because of the issues involved, it is necessary to set it out quite fully. It admits receipt by the defendants of the sum of $10,320, and that no part thereof has been repaid to plaintiffs, and that repayment was demanded on the day this action was brought. As a defense it alleges that, at the time the above mentioned sum of money was received by the defendants from the plaintiffs, the defendants were owners in equal shares of E. ½, Sec. 19, W. ½, Sec. 20, and S. E. ¼, Sec. 20, Tp. 110, R. 63, except Chicago, Milwaukee & St. Paul right of way, and subject to mortgages of $60,500, and that the legal title to said land was in defendant Tredway, in trust for all the defendants; that said property had been previously purchased and was held by defendants for the purpose of selling or trading the same, subject to the mortgages, and sharing equally in whatever profit or loss might result from the venture; that, when the money was paid to defendants, it was agreed between plaintiff and defendants that, in consideration of said payment, plaintiff should acquire a one-half interest in the property; and that defendant Butterfield should retain and have the other half interest; that at the time, and in pursuance of said agreement, a warranty deed, in South Dakota statutory form, conveying said real property, subject to the mortgages of record thereon, was duly executed and acknowledged by the defendant Tredway and his wife, with the name of the grantee left blank; that it was understood and agreed between the plaintiff and defendants that whenever plaintiff and Butterfield should sell said property, subject to said mortgages, plaintiff and defendant Butterfield were authorized to insert in said deed the name of any grantee to whom they might transfer the property; that plaintiff and Butterfield should share equally in the profit or losses resulting from the venture, and that defendant Tredway would, whenever requested by plaintiff, furnish whatever written authority might be necessary to complete said deed; and further alleged that ,after acquiring said half interest in said property and venture, plaintiff negotiated with one H. H. Hamilton of St. Paul, Minn., for the sale of said property to Hamilton; that plaintiff and Butterfield went to the

state of Michigan for the purpose of ascertaining the value of certain securities which Hamilton was proposing to exchange for said property; that thereafter, and about November 3, 1921, plaintiff and Butterfield entered into a written contract with Hamilton whereby it was agreed that plaintiff and Butterfield would convey to Hamilton or his nominee by good and sufficient warranty deed, clear of incumbrances, except mortgages for $60,500, all the property described in said deed from defendant Tredway, and that said Hamilton should pay to plaintiff and Butterfield, as a consideration for the same, $108,000, to be paid by assuming the mortgages of record on the land and interest due thereon, and by transferring to plaintiff and Butterfield certain bonds and notes secured by mortgages on land in northern Michigan; that thereafter, in pursuance of said contract, plaintiff and defendant Butterfield delivered said warranty deed to Hamilton, and received from Hamilton substantially all the security provided for in said contract, of which plaintiff received half and Butterfield half; that neither plaintiff nor any other person has ever requested defendant Tredway to insert the name of any grantee in said deed, or to authorize such insertion, although defendant Tredway has at all times been, and now is, ready and willing to execute a proper conveyance of said property, subject to said mortgages. Alleges that, after the transfer of a half interest in said property and venture to plaintiff, neither the defendant Tredway nor the defendant McGinty had any interest in said enterprise, or did anything in relation to the transfer of the property to Hamilton.

Answering the second cause of action, defendant alleged that, after plaintiff acquired a one-half interest in said property and venture, he assumed actual personal control and management of the property, and continued to have actual personal control and management thereof until the property was transferred to Hamilton, that plaintiff exercised all the rights of owner of said property, leased the same, and collected rents thereon, performed labor thereon, and expended money in keeping the premises in repair; denies any knowledge of the amount so expended, and alleges that whatever sums were so expended were not spent at the request of, or for the benefit of, any of the defendants, but voluntarily expended by plaintiff on his own behalf and for his own benefit as a half owner in said property.

Later, and pursuant to an order of the court, plaintiff made the following bill of particulars:

"(1) That as to the contractual relation existing between the plaintiff and the defendants, at the time of the payment of the moneys as set forth in the first cause of action, * * * defendants were joint owners of the lands described, although the legal title to said lands was held by the defendant, Tredway.

"(2) That is to the facts upon which it is claimed defendants, or either of them, became indebted to plaintiff in the sum stated in the first cause of action in plaintiff's complaint, plaintiff states that at the time of the payment of said money the defendant V. H. Butterfield represented to the plaintiff that, if plaintiff would pay defendants the said sum of money, to wit, $10,320, he would convey, or cause to be conveyed, to plaintiff an undivided one-half interest in and to the land hereinafter described. Plaintiff, relying on this said representation so made by the defendant V. H. Butterfield, * * * paid said $10,320 to defendant; * * * that each of said defendants received one-third of said money so paid by plaintiff with full knowledge of the representation so made to plaintiff by the defendant Butterfield."

The case was tried on these issues. At the close of the evidence the court, on defendants' motion, directed a verdict for defendants, and plaintiff appeals.

There are four assignments of error, only two of which need be considered in the determination of this case. They are assignments Nos. 1 and 2, as follows:

No. 1. Error "in granting defendants' motion for direction of verdict."

No. 2. Error "in excluding the evidence offered by plaintiff tending to show the value of the Michigan mortgages."

[1] Under assignment No. 1, appellant states his contention as follows:

"The error consists in this, that the undisputed evidence shows that no enforceable contract was entered into by which the defendants, or either of them, and particularly the defendant Tredway, were bound to deliver to plaintiff a warranty deed and abstract to a one-half interest in the Tredway lands, that the plain-

tiff, not having received either the deed or an enforceable contract for a deed, is entitled to recover the money paid on the void agreement."

Appellant further argues that, after plaintiff paid his money, Tredway and McGinty each still owned an undivided one-sixth of this land. With these contentions we cannot agree.

It appears from the evidence that V. H. Butterfield, L. C. Tredway, and J. B. McGinty, respondents in this case, were joint owners of the east half of section 19 and the west half and southeast quarter of Section 20, township 110, range 63, in Beadle county, subject to a mortgage of $60,500.

The title to this land was taken in the name of Tredway, but he held the title as trustee for all three; each having paid one-third of the purchase price and owning an undivided one-third interest in the land.

About a year after defendants bought this land, Butterfield began negotiations with plaintiff, looking toward the sale of a one-half interest to him. About these negotiations plaintiff tetsifies as follows:

Butterfield wanted to sell me a one-half interest in this land. The land appealed to me. Butterfield told me that he, Tredway, and McGinty owned this land. His proposition was to sell me a one-half interest.

Q. What did he say about the other fellows? Were they going to stay in the land? A. No, we were to own the land, Butterfield and I, sole ownership. I told him I would take the land; take a half interest. I paid him $10,320 down with the understanding I was to get a deed and abstract for my half. I understood in a day or two Mr. Butterfield would give me a deed and abstract for this place when I paid this money."

Butterfield says he told plaintiff if he wanted to buy a half interest in this land he would sell it to him, and "he and I would take control of the farm and operate it as we saw fit," and further says that, after the deal with plaintiff, he (Butterfield) acquired the interest of Tredway and McGinty in the land.

After plaintiff made this contract with Butterfield, Tredway and wife executed a deed for the land, leaving the name of the grantee blank, and deposited the deed in the James Valley Bank

at Huron, together with a letter of instructions concerning the delivery of this deed, signed by both McGinty and Tredway. This deed was subject to the order of plaintiff and Butterfield, and was to be filled out to them or left in blank as they directed. Tredway testifies after he gave this deed he did not figure he had any further interest in the land. McGinty testifies: "I understood when I got one-third of Wayne's money that was the end of my interest in the land."

In the letter of instructions deposited with the deed signed by both Tredway and McGinty, they expressly stated they had each sold their one-third interest in this land to Larmie Wayne, and V. H. Butterfield.

In plaintiff's bill of particulars, paragraph 2, he alleges that each of these defendants received his one-third of the money paid by Wayne, with full knowledge of the representations made to Wayne by Butterfield. This allegation is not disputed; in fact it is corroborated by the testimony and conduct of all the defendants.

It follows that Tredway and wife executed the deed, and Tredway executed the escrow agreement, and deposited them in the James Valley Bank; accepted his one-third of the $10,320 purchase money paid by plaintiff; and turned over the possession of the land to plaintiff and Butterfield with full knowledge of and in an attempt to carry out the agreement of sale made between Wayne and Butterfield, and that McGinty signed the escrow agreement and turned over the possession of his share of the property to Wayne and Butterfield with the same knowledge and for the same purpose.

Immediately after plaintiff had paid defendants in full for his one-half interest in the land, plaintiff and Butterfield entered into the exclusive possession of all the land, exercised and retained possession until they sold the land to Hamilton, and delivered to him the deed, which was in escrow and subject to the order of Wayne and Butterfield in the James Valley Bank. Under this evidence it is immaterial whether Wayne ever saw or talked with either Tredway or McGinty about the deal. They accepted the benefits with full knowledge of the contract made by Butterfield for them, and are bound by it.

[2] It is clear from this testimony there was an oral contract between these parties to convey; the contract price was fully

paid, and the purchasers entered into actual possession of the land. Specific performance of such a contract may be enforced. Section 856, R. C. 1919; Baker v. Baker, 2 S. D. 261, 49 N. W. 1064, 39 Am. St. Rep. 776; 36 Cyc. p. 654, § 2.

[3] It should be observed that there is no question of fraud or deceit on the part of any of these defendants. They came lawfully into the possession of plaintiff's money. Their only obligation was to convey, or cause to be conveyed, to him an undivided one-half interest in the land above described. The time to make the conveyance was not fixed by the contract, but was expected to be at a future date. In such case the law implies the contract is to be performed on demand within a reasonable time. 27 R. C. L. 155.

[4] Before a vendee of realty who has made partial payments on the purchase price can repudiate his contract of purchase and recover the sums paid, when no question of fraud or misrepresentation is involved, he must show that the vendor is unwilling or unable to fulfill the terms of the contract, or has committed some act entitling the vendee to rescind. Burton v. Ryther, 38 S. D. 342, 161 N. W. 350.

[5] It clearly appears from the evidence in this case that plaintiff was past 40 years of age, a successful business man, and had proved up on at least one quarter of land in this state, and owned two or three quarters beyond the Missouri river. That he had recently been associated with a party of Huron men in buying and selling 1,920 acres of land south of Huron, and knew in a general way the land conditions around there. That he never demanded a deed to this land from any one. That he never rescinded, nor attempted to rescind, this contract. On the contrary, it appears from the evidence that the deed with the grantee's name in blank, executed by Tredway and wife, and subject to the control and order of plaintiff and Butterfield, remained in the James Valley Bank, where plaintiff transacted his banking business, together with the escrow letter signed by Tredway and McGinty for about a year. That plaintiff and Butterfield remained in the exclusive possession and control of said land during all that time, rented it, and made improvements upon the land. That on the 3d day of November, 1921, plaintiff and Butterfield entered into a written contract with one H. H. Hamilton, by the terms of

which they agreed to sell said land to Hamilton for $108,000, payable by Hamilton's taking said land, subject to its mortgages and interest and giving to Wayne and Butterfield $45,000 in mortgages and bonds upon northern Michigan lands. That Wayne and Butterfield went to Michigan to examine these lands, and, after making some examination of them, in fact all the examination they thought best to make, Butterfield, with plaintiff's full knowledge, agreed to select the mortgages they would take from a soil map. That afterwards Butterfield, with plaintiff's knowledge, received and accepted from Hamilton more than $45,000 of such bonds and mortgages. That plaintiff received about $15,000 in such bonds and mortgages, and has retained them all ever since said time. It further appears that upon the receipt of these mortgages the blank deed was withdrawn from the bank and delivered to Hamilton, and by Hamilton transferred to one Baker of Sioux Falls, still in blank, as he (Hamilton) had received it. Under this evidence plaintiff had at least constructive notice of the existence of the Tredway deed. Section 15, R. C. 1919. He had knowledge of facts that would put any prudent man on inquiry. He accepted the deed, sold the land, and received the full price for his beneficial interest. Plaintiff cannot now be heard to say the deed was void.

It is true that later Judge Haney, acting for defendant Tredway, obtained said blank deed from Baker on the payment of $200, and tendered and offered the deed in court at the trial; and further offered to make a good and sufficient deed to the land to such person as the court should find entitled thereto. It was stipulated in court that the title to the land at the time of the trial stood in the same manner that it did on the 8th of November, 1919, when the deal was made with plaintiff. As we view this case, the transfer of the deed with the grantee's name in blank from Hamilton to Baker and from Baker back to Tredway in no way changed the legal relation of the parties to this suit.

[6] Assuming plaintiff's testimony to be in all respects true, we hold the evidence here presented shows a contract between plaintiff and all three of the defendants for a sale and purchase of a half interest in this land. This contract was enforceable in equity, and before plaintiff could repudiate his contract of purchase he must show that the vendor was unwilling or unable to

fulfill the terms of the contract, or that the plaintiff had rescinded the contract because of some act committed by the vendor which entitled him to rescind.

The undisputed evidence shows that defendants were at all times able and willing to perform the contract on their part. It is clear from the evidence that the improvements made, taxes and interest paid, were made and paid by plaintiff and Butterfield as owners of the land, and for their use and benefit only. Therefore the plaintiff was not entitled to recover any part of the purchase price paid or money expended from either of these defendants.

[7] Plaintiff has strenuously contended the trial court erred in excluding evidence showing the value of the Michigan securities. In view of what has heretofore been said in this opinion, we think the testimony concerning the value of the securities was properly excluded, but we might further say neither Tredway nor McGinty was in any way connected with the transaction between plaintiff, Butterfield, and Hamilton. If a fraud was perpetrated upon plaintiff in the exchange for the Michigan securities, the same fraud was perpetrated upon Butterfield. The objection to this evidence was property sustained.

The judgment and order of the trial court are affirmed.

KNIGHT, Circuit Judge, sitting in lieu of DILLON, Judge.