### THE IGO COMPANY v. ORA PARKS AND ANOTHER.

89 N. W. (2d) 625.

April 11, 1958—No. 37,295.

*William E. Crowder* and *Thomson & Williams,* for appellants.
*Kelly, LeFevere & Haertzen,* for respondent.

NELSON, JUSTICE.

Action for recovery of money on a promissory note given by defendants to plaintiff as real estate agent for owners of certain real estate in Minneapolis consisting of a 10-unit structure, each unit containing 6 rooms.

Plaintiff is a Minnesota corporation engaged in the business of selling real estate. Defendants, husband and wife, became interested in the purchase of the above 10-unit structure and called plaintiff's office for particulars January 5, 1956. Plaintiff sent their salesman Harvey Amlund to interview defendants. He obtained their offer to purchase the property upon the following terms: $625 earnest money, $1,875 cash on or before the closing date, and the balance of $10,000 by defendants' obtaining a G. I. mortgage in that amount. The earnest money payment consisted of a note for $600 and $25 in the form of a check. The offer was contingent upon buyers' being able to secure G. I. financing. The owners refused to accept the offer as made. They required the agreement to be amended by including an additional proviso calling for the placement of a maximum first mortgage loan and the balance in cash. As a result a second agreement was prepared and signed January 12, 1956.

Subsequently, on April 2, 1956, a third agreement was entered into

replacing the former agreement. This new agreement providing for a sale price of $12,500, with $3,625 as the downpayment, and the balance according to the terms of a contract for deed. The $600 note and $25 check previously received by plaintiff under the terms of the first agreement were to be credited on the downpayment. The aforesaid note is the subject of this lawsuit.

The purchase agreement of April 2, 1956, called for closing and possession not later than May 1, 1956. It required the seller to furnish an abstract of title and allowed buyers 10 days after receipt of the abstract for an examination and sellers thereafter 30 days to make title marketable if found to be unmarketable.

It appears that, during the period of the aforesaid negotiations, defendants were in the process of selling their own home and that the closing of the sale herein was dependent upon the closing of the sale of their home property. Plaintiff made frequent calls to the Title Insurance Company at defendants' request to inquire about the closing of that transaction.

Defendants by their answer admit the execution and delivery of the note but allege as a defense that the premises were not as warranted; that they were not transferred to defendants; that the $600 note was obtained and delivered through false and fraudulent representations; and that upon discovery thereof defendants rescinded the agreement to purchase causing the consideration for the note to fail. Defendants counterclaim for $25 damages, this being the amount of the check given with the note, and pray that plaintiff be denied recovery; that the note be canceled and surrendered to the defendants; and that the final purchase agreement be canceled and declared null and void.

It appears from the testimony that defendants were familiar with the property when they signed the first purchase agreement. While they executed three different purchase agreements, they admit to being inside the property to view it on only two occasions. They complain that on the first occasion they were only permitted to view the caretaker's apartment but on the second occasion, in the latter part of May 1956, they do admit that they made a more complete inspection. They state, however, that at the time of the last inspection the premises were in such a state of disrepair that they advised plaintiff they would not go

through with the deal. Plaintiff's witnesses, however, testified that the defendants were fully informed about the condition of the premises and the income therefrom and defendants so admitted, but Mrs. Parks claimed at one point in her testimony that they had relied upon the word of plaintiff's agents that the property was in a renting condition and upon nothing else.

Plaintiff's witnesses testified that in the early part of May 1956 the abstract of title to the 10-unit structure was extended by an abstract company and delivered to plaintiff; that Willard M. Igo, president of plaintiff, notified the defendants that the abstract had been extended, that it was at their office, and that an attorney had been contacted in regard to its examination as requested by defendants. Defendants denied that they had been so notified, but they make no claim of having asked plaintiff for the abstract and the record indicates that at no time prior to the actual trial did defendants claim that plaintiff failed to provide an abstract and that this failure on the part of the plaintiff constituted a basis for their refusal to complete the transaction. Mrs. Parks on cross-examination said that there had never been any conversation about an abstract, that no abstract had been offered to her, and that defendants had heard nothing about an abstract. There was, however, testimony on behalf of plaintiff that someone in its office had telephoned Mrs. Parks advising her that the abstract was in their office, ready for delivery, and that inquiry was also made from her as to what attorney should be furnished with the abstract for the purpose of examining it.

At the close of the trial before a jury in municipal court, motions by both sides for a directed verdict were denied, and the court submitted the matter by special verdict, requiring answers to six interrogatories. These interrogatories were answered by the jury as follows:

"1. The plaintiff did represent to the defendants before any purchase agreement was signed by the sellers and the buyers that the premises were livable.

"2. The premises were livable.

"3. The defendants did rely upon the claimed representation that the premises were livable when they entered into the first purchase agreement.

162

"4. The plaintiff did fail to proffer to the defendants an abstract of title within a reasonable time after April 2, 1956.

"5. Said failure was a material breach of contract by the plaintiff.

"6. Plaintiff's failure was not waived by conduct of the defendants."

When the jury returned its special verdict, the trial judge made the following inquiry:

"Ladies and gentlemen of the jury, is this your verdict, so say you all?

"The Jurors: Yes.

"The Court: Very well. I just wanted to make sure on one question here, and your response to it. You answered Question 2 'Were the premises livable? Yes.' In other words, you found that the representation was true and not a false representation? Is that correct, Mr. Dougherty [the foreman of the jury]?

"Mr. Dougherty: That is the way we found it.

"The Court: Is that true as to all of the other jurors? Is there any jurors that has any doubt about that being the finding of the jury?

"(No response.)

"The Court: None of these jurors indicate that they have any doubt about it. In other words, you found here there was a representation made but the representation was true so that the charge of fraud was not sustained by the defendants, is that correct?

"Mr. Dougherty: That is correct."

The trial judge, upon the special verdict of the jury and all the files, records, and proceedings in the action, ordered entry of judgment to the effect that plaintiff recover nothing from the defendants and that defendants recover from plaintiff $25 together with interest, costs, and disbursements.

In the meantime plaintiff moved for judgment notwithstanding the special verdict of the jury or for a new trial. The trial judge thereupon set aside findings 4, 5, and 6 of the jury as not justified by the evidence and contrary to law, granting judgment for plaintiff against the defendants for $600 with interest, costs, and disbursements. The court attached its memorandum which was made a part of its order for judgment notwithstanding the verdict.

■ The record indicates clearly that the main defense was that the purchase agreement was fraudulently procured by plaintiff from defendants, on which defense the verdict was for plaintiff. The defendants did urge as a second defense, however, the failure of plaintiff to furnish an abstract of title within a reasonable time pursuant to the purchase agreement of April 2, 1956. The trial judge took the view that the undisputed evidence clearly established that the delay in closing the deal was occasioned by defendants' delay in obtaining the money for the downpayment, which they were about to receive from a condemnation proceeding, and that therefore defendants' evidence was insufficient to establish that plaintiff had delayed unreasonably in furnishing an abstract or that the failure to do so constituted a material breach of the contract. The court below also pointed out that the defendants had by their own testimony established that their refusal to go through with the purchase of the property was based upon reasons other than the failure of the plaintiff to furnish an abstract of title. The court was convinced that these circumstances conclusively established a waiver on the part of the defendants of the requirement that the abstract of title be furnished in strict compliance with the terms of the agreement.

The conclusions reached by the trial court, we think, find support in Johnston v. Johnson, 43 Minn. 5, 44 N. W. 668,[1] which involved an action to cancel a contract for sale of land. There had been a downpayment of $450. Another sum was to be paid within 20 days after delivery of an abstract showing clear title, the remainder of the purchase price to be paid subsequently. It was agreed that time should be of the essence of the contract. The abstract, when presented by the vendors, indicated that an action was then pending concerning title to a part of the land. It was disclosed, however, that a settlement of that action had been arranged and that the defendant Johnson had been notified of that fact. The vendors also were both willing and able to perform their part of the contract with defendant, but the defendant was not able to per-

[1]Kohagen-Mendenhall Co. v. Joyce, 221 Minn. 83, 21 N. W. (2d) 232; Seerup v. Goraczkowski, 159 Minn. 364, 199 N. W. 94; Nelson Real Estate Agency v. Seeman, 147 Minn. 354, 180 N. W. 227; Annotation, 57 A. L. R. 1514.

form on his part. He could not provide the necessary money and therefore he did not comply with the terms of the contract on his part. He notified the vendors of his inability to perform. The trial court ordered judgment canceling the contract and denying the defendant the right to recover the downpayment of $450. On appeal to this court it was held that the findings of the trial court justified the conclusion reached and the judgment entered. The following statement by this court in that case is applicable here (43 Minn. 6, 44 N. W. 668):

"* * * There was no necessity for their presenting a clear abstract of title or tendering a deed, when, for reasons wholly foreign to the matter of the title, the vendee had notified them that he could not perform."

█ The court reached the conclusion that there was no credible evidence in the record to support the jury's answers to the special interrogatories submitted regarding the failure to furnish an abstract. We conclude, as did the court below, that as a matter of law the record neither supports nor justifies an entry of judgment for defendants. It is our view, after a careful examination of the record, that defendants failed to prove any defense to the suit on the note and that therefore the trial court was justified in entering judgment for the plaintiff notwithstanding the special verdict.

Affirmed.