CLARENCE R. MILLER v. HERBERT S. SNEDEKER
AND ANOTHER.

101 N. W. (2d) 213.

January 22, 1960—No. 37,762.

 

*Van Valkenburg, Blaisdell & Moss,* for appellant.
*E. T. Chesnut,* for respondents.

NELSON, JUSTICE.

This appeal involves an action for recovery of earnest money paid upon an agreement for the purchase of real property which contract plaintiff claims was terminated by rescission. This appeal is by plaintiff from a judgment for defendants.

The real property involved is located in the city of Minneapolis at 307 West Minnehaha Parkway and consists roughly of one-half of Lot 3 and a small triangular portion of Lot 18 in Auditor's Subdivision No. 118. The residence thereon faces the Parkway and there is a garage located at the rear of the lot. Since there is no alley in the block and the dwelling extends to some 4 feet from either side line, access to the garage is obtainable only by virtue of a driveway easement extending across that portion of Lot 3 not included in the premises.

The purchase agreement was entered into between defendants, Herbert S. Snedeker and Laura C. Snedeker, his wife, as vendors, and the plaintiff, Clarence R. Miller, as purchaser. The premises sold included an easement for the above-mentioned driveway.

The earnest money payments totaling $1,000 were made as required, although one was late. The stated consideration in the purchase agreement was $19,500, earnest money payments of $500 each to be paid within 2 weeks and the balance of $18,500 on or before 60 days from and after July 12, 1956. A provision of the contract important on this appeal is the following:

"* * * The buyer shall be allowed 10 days after receipt thereof for examination of said title and the making of any objections thereto, said objections to be made in writing or deemed to be waived. If any objections are so made the seller shall be allowed 30 days to make such title marketable."

Plaintiff made no written objections to the title within the designated 10 days after receiving the abstract of title but orally advised the defendants that his attorney had examined the title and found it "okay."

The contract further provides:

"* * * if the title to said property be found marketable, or be so made within said time, and said buyer shall default in any of the agreements and continue in default for a period of 10 days, then and in that case the seller may terminate this contract, and on such termination all the payments made upon this contract shall be retained by said seller and said agent, as their respective interests may appear, as liquidated damages, *time being of the essence hereof*; * * *." (Italics supplied.)

That the defendants were pressing the plaintiff to perform is clearly shown by defendants' witness Arthur L. Kreitter and by plaintiff's witness Mrs. Doreen Romain. That plaintiff could not raise the necessary money to enable him to perform is equally clear. Mrs. Romain appearing on behalf of the plaintiff testified that she was to lend plaintiff $5,000 to be used by him in the purchase of the premises but that her loan was contingent on their marriage. They had not married at the time of the trial, more than a year later.

There had been communications from plaintiff to defendants and their real estate agent, Arthur L. Kreitter, that plaintiff expected to raise the balance of the purchase price in part by placing a mortgage upon the premises and the remainder by the personal loan from Mrs. Romain. Plaintiff had also indicated that he owned another house from the sale of which he could realize a sufficient equity if necessary, but the record indicates no effort on his part to sell. As the time for closing approached, Kreitter, according to his testimony, had several conversations with the plaintiff in which plaintiff informed him that Mrs. Romain had withdrawn her offer of a loan because of tax considerations and that as a consequence plaintiff was unable to raise the balance of the money. Nevertheless, Kreitter continued efforts toward completion of the transaction. This included conversations with plaintiff after the 60-day period had expired and also the sending of the abstract to a mortgage company as late as September 27 to assist plaintiff in arranging a loan.

The record indicates that prior to October 15 plaintiff received a title opinion from the mortgage company. On that day plaintiff advised

defendants by letter that the title to the premises was unmarketable by reason of four claimed defects which he enumerated as follows:

"No description is given of easement over the portion of lot entering into this premise.

"Old age assistance lien to be corrected.

"Mortgage over balance of lot affects the easement.

"Mortgage covers part of Lot 18 which is part of this transaction."

Plaintiff did not furnish defendants with a title opinion substantiating his claimed defects of title. In fact, the record indicates that an attorney of his own choice had examined the title and written an opinion thereon September 19, 1956, which found the premises free and clear of any encumbrances of record; this was no doubt the opinion which the plaintiff had in mind when he advised the defendants that his attorney had examined the title and found it "okay."

Plaintiff closed his letter of October 15 by saying:

"In view of the above this title will have to be corrected by proper court action."

The defendants replied on October 16 by a registered letter which read as follows:

"If you will refer to your copy of the Purchase Agreement dated July 12, 1956, you will note it states: 'The buyer shall be allowed 10 days after receipt thereof for examination of said title and the making of any objections thereto, said objections to be made in writing or deemed to be waived.'

"The records show the Abstract was brought to date as of August 13, 1956, and was turned over to you by David C. Bell Investment Co. within a day or so thereafter. It is our understanding that when it was returned by you the latter part of September to the David C. Bell Investment Co. that your attorney had passed the title as marketable.

"No objection was made to us at any time, in writing or otherwise as to this title, during the duration of the Purchase Agreement, nor the 10 days it continued in default.

"We, therefore, regard the Purchase Agreement as terminated as of September 22, 1956."

Following receipt of this letter, plaintiff, on October 24, 1956, commenced this action claiming the right to rescind the contract on the basis of defendants' letter, without any notice to the defendants and without making any tender of any kind and notwithstanding he had failed to pay the balance of the purchase price as required on or before September 12, 1956. Plaintiff also sought recovery of the earnest money paid in the sum of $1,000. Defendants denied plaintiff's claim and controverted the validity of plaintiff's title objections, alleging default on the part of the plaintiff in failing to tender or pay the balance of the purchase price due September 12, 1956; plaintiff's inability to complete performance of the contract; and that damages suffered by defendants exceeded the amount of the earnest money.

The trial court determined as a matter of law that defendants were entitled to retain, as liquidated damages, the $1,000 earnest money and to recover their costs and disbursements.

■ On appeal from the judgment, since no motion was made for a new trial, the only issues before the court are whether the evidence sustained the trial court's findings and whether those findings support the conclusions of law and the judgment.

Plaintiff lists numerous assignments of error and challenges certain findings of the court as being without support by the evidence and contrary to law. Plaintiff in his complaint alleged:

"That on October 16, 1956, the defendants herein attempted to and elected to rescind said *Earnest Money Contract and plaintiff herein accepts said attempt to terminate said Contract by defendants and in his own behalf hereby elects to rescind said Contract.*" (Italics supplied.)

The plaintiff in his brief states that there appears to be agreement of all concerned that the purchase agreement has somehow been terminated, but that there is a disparity of views of the legal theory by which that conclusion is reached. Ordinarily it is not our province to go into any extended discussion of the evidence to prove or demonstrate the absolute correctness of the findings of the trial court. The policy of this court has been set forth in the following language:

"* * * It is the duty of such appellate court, of course, fully and

fairly to consider such evidence, but so far only as is necessary to determine beyond question that it reasonably tends to support the findings; not that the trial court would not have been justified in making findings thereon in appellant's favor, but that the findings made are supported by evidence reasonably tending to establish the facts found." Carver v. Bagley, 79 Minn. 114, 115, 81 N. W. 757, 758; Service & Security, Inc. v. St. Paul F. S. & L. Assn. 211 Minn. 199, 300 N. W. 811.

■ The record is clear that time was of the essence of the contract; that defendants made delivery of the abstract of title to the premises to plaintiff on August 13, 1956, after having it certified to date showing complete chain of title to defendants' premises and the premises subject to the driveway easement; and that plaintiff failed to provide written objections to the title within the designated 10 days and also to comply with the contract terms as to the payment of the balance of the purchase price. It is undisputed that he later advised the defendants that his attorney had examined the abstract of title and had found it to be "okay." The record does not indicate the date when plaintiff so informed the defendants but it indicates that his attorney rendered a written title opinion to the effect that said premises were free and clear of any encumbrance of record September 19, 1956, 7 days after the payment of the balance of the purchase price had become due.

Defendants did not institute statutory cancellation proceedings to terminate the contract. The only evidence on the issue of termination by the defendants is their letter dated October 16, 1956. There is undisputed evidence that the defendants had disposed of a considerable portion of their household goods and had rented and made a downpayment on an apartment during September 1956 in order to enable them to give possession to the plaintiff.

Mrs. Romain testified that it had been understood that she was to lend plaintiff $5,000 toward the purchase price but that such loan was contingent on their marriage. At the trial, more than 18 months after the date of the purchase agreement, she was asked the following question on cross-examination: "Well, now that you didn't get married, without being married you didn't plan on putting $5,000 into this

home, did you?" She answered, "No, I didn't. Not without being married." She stated by way of explanation that:

"Well, we didn't proceed with our plans to get married when we didn't purchase the house from the Snedekers. We just didn't proceed any further, because I have an apartment building and Mr. Miller has a home, but none of my apartments were large enough for our combined family and Mr. Miller's home was not large enough for our kind of family. That is why we were buying a larger home."

Other questions and answers followed:

"Q. Well, you had planned—what I am getting at, you had planned to marry in the fall of '56?

"A. Yes.

"Q. You didn't get married?

"A. No, we didn't."

Mr. Kreitter, called as defendants' witness, testified on direct as to what transpired in conversations with plaintiff after the purchase agreement had been signed as follows:

"* * * Well, do you want me to tell the story?

"Q. Yes, go ahead and tell it.

"A. He said, 'The young lady I planned on marrying was—we had a split-up and—'

"Mr. Van Valkenburg: Object to that as irrelevant and incompetent, has nothing to do with the marketability of the title.

"The Court: I think it shows whether these people had some reason for trying to get out of this contract. Overruled, go ahead.

"A. And he said that they were not going to get married and he didn't want to put any more money into the deal. Well, he called me in the course of eight or ten days and said that everything was all fixed up again and he would give me a check for the additional $500 if I come and get it. So I went to the Fred L. Gray Company and picked up another $500 check from Mr. Miller which subsequently was cleared through the bank at Stillwater, and then we proceeded with the extension of the abstract for the purpose of having his attorney examine it.

"Q. And you delivered the abstract to him?

"A. Yes, as I recall I delivered the abstract to Mr. Miller after it was extended by the Title Insurance Company.

"Q. And did he subsequently return that abstract to you?

"A. Yes.

\* \* \* \* \*

"Q. Was that done the same day?

"A. *No, no. That was possibly two or three weeks afterwards. He had the examination made, apparently, by some attorney.*

"Q. Did you have some conversation with him about that?

"A. Yes.

"Q. What was the conversation?

"A. *His attorney said the title was okay.*

"Q. And then you say sometime later—how long after did he get the abstract again?

\* \* \* \* \*

"\* \* \* *The abstract was delivered to the First Federal Savings & Loan on September 27, 1956.*

"Q. Did you have any subsequent conversations with Mr. Miller?

"A. Yes, regarding the closing of the sale, and then he stated that the young lady whom he planned on marrying was supposed to furnish the balance of the money over and above the mortgage to be put on there, and he said she apparently had sold a piece of property. \* \* \* her attorney that advised her that could not be done because she would be assessed under the federal tax system for a profit on that other piece of property, and she should not deliver that money to Miller for that reason, or she would have to pay a tax on it. If she bought a comparable piece of property herself then there would be no tax on it.

"Q. Anything further to that conversation?

"A. \* \* \* I talked with him two or three times afterwards about the closing of the sale and in fact notified him over the telephone 10 days before the expiration date of the sale, and he said, '*I can't do anything.*' He said, '*I can't get the money, I haven't any way of getting the money. I haven't sold my house yet.*' " (Italics supplied.)

Mr. Kreitter also testified that Mrs. Romain called him on October

1, 1956, stating that if he would close the sale that day at a reduced price, they would pay cash. She insisted on Mr. Kreitter's taking the matter up with the Snedekers, which he did, but they advised him that they would not be interested at that time in discounting the purchase price $500 in order to complete the sale. The next and final communication between plaintiff and defendants was the exchange of letters on October 15 and 16, 1956.

Whether there was compliance with the contract here was a question of fact, and the matter of resolving conflicts in the evidence belongs to the trial court.[1]

This court in Johnston v. Johnson, 43 Minn. 5, 6, 44 N. W. 668, said:

"* * * There was no necessity for their presenting a clear abstract of title or tendering a deed, when, for reasons wholly foreign to the matter of the title, the vendee had notified them that he could not perform."

In the Johnston case, an action to cancel a contract for sale of land, there had been a downpayment of $450. The contract provided that another sum was to be paid within 20 days after delivery of an abstract showing clear title, the remainder of the purchase price to be paid subsequently. It was agreed that time should be of the essence of the contract. The vendors were both willing and able to perform their part of the contract with defendant, but the defendant vendee was unable to perform on his part.[2] He notified the vendors of his inability to perform. The trial court ordered judgment canceling the contract and denying the defendant the right to recover the down-

---

[1] See, The Igo Co. v. Parks, 252 Minn. 158, 89 N. W. (2d) 625; Service & Security, Inc. v. St. Paul F. S. & L. Assn. 211 Minn. 199, 300 N. W. 811; Hoverson v. Hoverson, 216 Minn. 237, 12 N. W. (2d) 497; Maust v. Maust, 222 Minn. 135, 23 N. W. (2d) 537; Olson v. Mullen, 244 Minn. 31, 68 N. W. (2d) 640; 1 Dunnell, Dig. (3 ed.) § 388, and cases cited.

[2] Tender of a deed under such circumstances is not required. Kohagen-Mendenhall Co. v. Joyce, 221 Minn. 83, 21 N. W. (2d) 232; Seerup v. Goraczkowski, 159 Minn. 364, 199 N. W. 94; Annotation, 57 A. L. R. 1512.

payment of $450. This court held that the trial court's findings justified the conclusions reached and the judgment entered.

This court's reasoning in the Johnston case may well apply to the situation in the instant case wherein it said (43 Minn. 6, 44 N. W. 668):

"* * * As they were willing and able to fulfil the contract on their part, and so notified the defendant, the substantial reason for its nonperformance was the defendant's declared inability to make the payment. He, then, and not they, were properly regarded as being in default. Therefore the judgment was right."

The rule appears to be well established that in order to be entitled to assert the vendor's default in furnishing a sufficient abstract, the vendee must show that the failure of the vendor is not due to any act of his; and, where the contract requires the vendee, after receiving an abstract, to point out any defects therein within a certain time and he fails to do this and it is for this reason that the vendor fails to correct the abstract, the vendee is held to have waived the objections he has thereto.[3]

The court found in the case at bar:

"That the abstract furnished plaintiff shows a complete chain of title to defendants' premises and of the premises subject to their driveway easement.

> * * * * *

"Plaintiff offered no competent evidence that the title was unmarketable as alleged in his complaint.

> * * * * *

"That the abstract and the records from the office of the Register of Deeds of Hennepin County, received in evidence, show the title of defendants to be free from doubt and marketable."

---

[3]Annotation, 52 A. L. R. 1496 to 1498; John v. Timm, 153 Minn. 401, 406, 190 N. W. 890, 892, wherein this court held "Objections to the title not so raised are waived"; McKay v. Ryan, 204 Minn. 480, 481, 284 N. W. 57, wherein this court held "Failure to make such seasonable demand waives the objection, following John v. Timm, [supra] * * *"; Lieber v. Nicholson (Tex. Com. App.) 206 S. W. 512.

Plaintiff complains that a large portion of the trial was taken up with the merits of the title objections and indicates that to be a subject which has but slight relevance to the issue on this appeal. The plaintiff, however, raised four objections to the title in his letter of October 15 without presenting an examination in writing. Here he appears to concern himself with only two of those objections; namely, the sufficiency of the description of the driveway easement and the apparent mortgage encumbrance upon a portion of Lot 18. Plaintiff says that in evaluating these objections he is not concerned with the title in fact but only with the marketable title of record. He concedes that defendants own title to an easement, capable, by survey or other means, of being made definite in location. He also concedes that the location of the driveway was actually pointed out to him and that it was further pointed out at the trial that the apparent mortgage encumbrance on Lot 18, in fact, is no longer effective.

Where a way is granted without fixing its location, but there is a way already located at the time of the grant, such way will be held to be the location of the way granted unless a contrary intention appears. 28 C. J. S., Easements, § 80b. In describing an easement all that is required is that the land which is subject to the easement be identified and the intention of the parties expressed. See, Hedderly v. Johnson, 42 Minn. 443, 44 N. W. 527, 18 A. S. R. 521; Ingelson v. Olson, 199 Minn. 422, 272 N. W. 270, 110 A. L. R. 167.

As to the apparent mortgage encumbrance on Lot 18, the abstract discloses that item 90 shows a partial release from a mortgage on "part of Lot 18" described at item 89. The release describes a part of Lot 18 by metes and bounds so the item was noted for reference although no part of the release description was within defendants' premises. Plaintiff's argument is based solely on the failure of the abstract to show a satisfaction of this mortgage, but plaintiff's contention will not be helped even if the mortgage had been a valid lien on defendants' premises by reason of the statute of limitations, M. S. A. 541.03.[4] The

---

[4]Minnesota Standards for Title Examinations, Standard No. 25, provides: "An examiner may disregard an unsatisfied mortgage of record, when 15 years have elapsed since its maturity," referring to § 541.03. The abstract

court found the four objections to the title enumerated in plaintiff's letter of October 15 to be without merit. The court also found that the abstract and the records from the office of the register of deeds of Hennepin County, received in evidence, show the title of defendants to be free from doubt and marketable.

In Howe v. Coates, 97 Minn. 385, 398, 107 N. W. 397, 403, 4 L.R.A. (N.S.) 1170, this court said:

" '* * * But there must be some debatable grounds on which the doubt can be justified.' A marketable title means a title free from reasonable doubt—what Lord Eldon, in Stapylton v. Scott (16 Ves. Jr. 272), called a rational doubt."

In Hedderly v. Johnson, *supra*, this court went on to say, arguendo, that where the title depended upon the bar of the statute of limitations and it clearly appeared that the real owner was barred, a marketable title was shown since in such cases the evidence to establish the title must, from the nature of the fact, be easily accessible.[5]

While the merits of the title objections had but slight relevancy, nevertheless the furnishing of the abstract of title, certified to date by the Title Insurance Company, to plaintiff on August 13, 1956, and plaintiff's failure to furnish defendants with a written examination stating title objections pursuant to the terms of the contract does have relevancy as does the fact that plaintiff had the abstract examined by his attorney and advised defendants that the title was "okay."

■ The rule seems to be well established in this state that on default by the vendor in a contract to convey, the vendee may maintain an action for the recovery of any payments he may have made on the purchase price. The vendee, however, cannot recover if he

---

here indicates the elapsed period to be nearly 30 years. Also, see Wacek v. Frink, 51 Minn. 282, 53 N. W. 633, relative to certification by abstractor.

[5]On marketability of title, see Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 A. S. R. 736; Hedderly v. Johnson, *supra*; Austin v. Barnum, 52 Minn. 136, 53 N. W. 1132; Howe v. Coates, *supra*; Stacey v. Taylor, 196 Minn. 202, 264 N. W. 809; Hubachek v. Maxbass Security Bank, 117 Minn. 163, 134 N. W. 640.

himself makes inexcusable default, and it is generally necessary for him to tender performance before suit. Generally a demand for a deed is a condition precedent to the action, but it is unnecessary where it is apparent that it would be unavailing. Notice, however, of rescission for default is a prerequisite to an action to recover payments, but it need not be in express terms or couched in any particular language. 20 Dunnell, Dig. (3 ed.) § 10098.

Defects in the title may be waived by the vendee. A party waives a default if, with knowledge of the facts, he treats the contract as still in force and deals with the other party accordingly. 20 Dunnell, Dig. (3 ed.) § 10039; Paget v. Park, 50 Minn. 186, 52 N. W. 532.

In Brendemuhl v. Schwager, 155 Minn. 321, 193 N. W. 455, the abstracts were turned over to the defendant vendee at the date of the contract. He later turned them over to a friend for examination, who in turn delivered them to an attorney for examination. No serious objection was made to the title until after default on the part of the defendant. It was held that defendant, having had the abstracts in his possession from the date of the contract, and not having raised or specified any defects of a material character until in his answer, was deemed to have waived the same, following John v. Timm, *supra*.

■ The general rule that a party to a contract cannot breach it and thereby secure for himself some right or advantage to the detriment of the other party thereto applies to contracts for the sale of real estate. In the application of this rule it is held that the vendee who, without breach on the part of the vendor, refuses to perform a contract for the purchase of real estate cannot recover from the vendor the amount paid on the purchase price.

■ A vendee in default cannot, by the great weight of authority, maintain an action in quasi contract or otherwise to recover payments made. The question of the recovery after part payment by a defaulting purchaser came before this court in McManus v. Blackmarr, 47 Minn. 331, 335, 50 N. W. 230, 231, where this court said:

"It is unnecessary to cite authorities to the proposition that where a vendee enters upon the performance of his contract to purchase, and,

paying part of the consideration, makes inexcusable default, he cannot maintain an action to recover the money so paid."

That there is in such case no right of refundment has been held in Johnston v. Johnson, *supra*; Grant v. Munch, 54 Minn. 111, 55 N. W. 902; and Nelson Real Estate Agency v. Seeman, 147 Minn. 354, 355, 180 N. W. 227, 228, wherein this court held:

"A vendee, who defaults in the payments due under such a contract and announces his inability to perform the same, is not entitled, unless the contract so provides, to a return of a payment made when the contract was entered into, nor has the court, in the absence of a statute to that effect, authority in equity to require a return of the money by the vendor as a condition to a cancelation of the contract."[6]

In Annotation, 59 A. L. R. 274, it is said:

"Where neither party offers to perform or demands performance at the time specified, the vendee, to be entitled to rescind the contract and recover the purchase money, must tender the balance due and demand a conveyance of the premises. * * *

\* \* \* \* \*

"Rescission is a question of fact; and, where the vendee undertakes to show the mutual rescission of a contract for the purchase of land, the burden is upon him to establish this fact. * * *

\* \* \* \* \*

"Before a vendee of realty who has made partial payments on the purchase price can repudiate his contract of purchase and recover the sums paid, when no question of fraud or misrepresentation is involved, he must show that the vendor is unwilling or unable to fulfil the terms of the contract, or has committed some act entitling the vendee to rescind."

---

[6]See, 14 Minn. L. Rev. 350 and authorities cited; 38 Minn. L. Rev. 172 to 175; Restatement, Contracts, § 357, especially *illustrations* 6 and 7. Also, see 38 Minn. L. Rev. 175 on the proposed uniform commercial code and the suggestion that if adopted it would invalidate unreasonably large liquidated damage clauses.

Townsend v. Tufts, 95 Cal. 257, 30 P. 528, 29 A. S. R. 107; Bradford v. Parkhurst, 96 Cal. 102, 30 P. 1106, 31 A. S. R. 189; Walters v. Miller, 10 Iowa 427; Eames v. Der Germania Turn Verein, 8 Ill. App. 663; Pfafflin v. Schmidt, 71 Ind. App. 496, 125 N. E. 431; Blunt v. Kelly, 219 Ill. App. 327; Wayne v. Butterfield, 50 S. D. 463, 210 N. W. 663; Burton v. Ryther, 38 S. D. 342, 161 N. W. 350.[7]

■ The rule appears to be well established that only a material breach of a contract or a substantial failure in its performance justifies a party thereto in rescinding. The general rule is that a party who wishes to rescind an agreement must place the opposite party in status quo. An attempted restoration of the status quo is an essential part of the rescission of a contract, unless such restoration is impossible. See, Heyn v. Braun, 239 Minn. 496, 59 N. W. (2d) 326; 4 Dunnell, Dig. (3 ed.) § 1808; Cut Price Super Markets v. Kingpin Foods, Inc. 256 Minn. 339, 98 N. W. (2d) 257; Beck v. Spindler, 256 Minn. 565, 99 N. W. (2d) 684.

■ Plaintiff also contends that his interest in the contract was never terminated under M. S. A. 559.21, which he asserts provides the exclusive method by which a vendor may terminate a purchaser's rights because of defaults, and that therefore the purchase agreement remains legally subsisting and enforcible. This court has held that § 559.21 does not prevent the purchaser's abandonment of the contract and furthermore that this section does not provide the exclusive remedy of the vendor for a breach of the contract terms. Section 559.21 is cumulative and does not exclude the vendor's rights of action against a defaulting vendee for specific performance or for a judicial termination of the contract. We have heretofore said that bringing an action

---

[7]Also see the following California decisions which hold that in order to entitle the vendee to recover payment made on the contract on the ground of rescission, he must make a tender of the balance due within the time limited by the contract and demand performance by the vendor; Griesemer v. Hammond, 18 Cal. App. 535, 123 P. 818; Oursler v. Thacher, 152 Cal. 739, 93 P. 1007; Skookum Oil Co. v. Thomas, 162 Cal. 539, 123 P. 363; Schwerin Estate Realty Co. v. Slye, 173 Cal. 170, 159 P. 420; List v. Moore, 20 Cal. App. 616, 129 P. 962; Pinkerton v. Morton, 63 Cal. App. 471, 218 P. 770.

is better for the vendee and gives him much more opportunity to protect his rights than the statutory cancellation. Neither does this section relieve the purchaser from the effect of an abandonment which the vendor accepts. What the aforesaid section does provide is the method by which, unaided by litigation, the vendor may cancel the contract when the purchaser defaults. There is nothing in the aforesaid statute that would permit a vendee in default to rescind the contract as of the date of its execution and recover any money he had paid upon it. This statute is of no aid to the plaintiff. See, Bowers v. Norton, 169 Minn. 198, 210 N. W. 871; Enkema v. McIntyre, 136 Minn. 293, 161 N. W. 587, 2 A. L. R. 411; State Bank v. Sylte, 162 Minn. 72, 202 N. W. 70; Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N. W. (2d) 273.

■ This court in Mason v. Edward Thompson Co. 94 Minn. 472, 474, 103 N. W. 507, stated the rule as follows:

"* * * the law is well settled that *the right to rescind on the ground of failure of performance belongs to the party who is himself without fault.* Even though he has sufficient grounds for rescission, if he has done some act which justifies the other party in refusing or delaying performance, or has failed to perform his own part of the contract, the right to rescind does not exist." (Italics supplied.)

Johnston v. Johnson, *supra*; McManus v. Blackmarr, *supra*; Stadelmann v. Boothroyd, 170 Minn. 430, 212 N. W. 908; Shupe v. Thede, 205 Iowa 1019, 218 N. W. 611.

Since the right to rescind on the ground of failure of performance belongs to the party who is free from default, the plaintiff, being in default, had no right to rescind the contract until he had removed his default by payment or tender. This he did not do. The court in part found:

"That prior to September 12, 1956, the closing date of the purchase as provided by the purchase agreement, and subsequently on or about the 20th day of September, 1956, the plaintiff advised the defendants that his attorney had examined the title to defendants' property and found the title free of incumbrance and marketable, but that he was

unable to raise $5000.00 of the amount needed to complete the purchase by reason of the refusal of a woman he had planned to marry, to assist him financially in the purchase as she had promised at the time the purchase agreement was entered into."

This finding has not been challenged.

The trial court also found that plaintiff's renunciation and termination of the purchase agreement was without legal justification. The trial court, in designating the money the defendants were authorized to retain as liquidated damages, was only following the contract. While this court must search the record to ascertain whether any erroneous rules of law have been applied and act accordingly, it must consider the testimony in the light most favorable to the prevailing party. We are governed by the rule that when an action is tried by a court without a jury its findings are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly contrary to the evidence, and such rule applies whether the appeal is from a judgment or from an order granting or denying a new trial. Bolduc v. New York Fire Ins. Co. 244 Minn. 192, 69 N. W. (2d) 660; Lipinski v. Lipinski, 227 Minn. 511, 35 N. W. (2d) 708.

Plaintiff has failed to sustain the burden of showing that there is no substantial evidence reasonably tending to sustain the trial court's findings. The evidence is ample as a whole to support the findings, and these in turn support the conclusions of law and the judgment.

Affirmed.