**Arthur ROSEBERG, Respondent,**

v.

**Donald STEEN, Appellant.**

**No. CO–87–670.**

Court of Appeals of Minnesota.

Dec. 1, 1987.

James E. O'Gorman, Thorwaldsen, Beeson, Malmstrom & Sorum, Detroit Lakes, for respondent.

Kenneth J. Kludt, Moorhead, for appellant.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

FORSBERG, Judge.

Respondent Arthur Roseberg sued appellant Donald Steen to recover money from the sale of corn which Roseberg claimed was security for a debt owed to him by Steen. Steen counterclaimed for money allegedly owed him under an oral agreement for the feed and care of cattle. Roseberg denied the existence of such an agreement and affirmatively alleged estoppel and entitlement to certain setoffs based on other debts owed him by Steen.

Both parties appeal from the judgment entered for Roseberg in the amount of $18,464.21, and for Steen in the amount of $1,419.64. We affirm.

## FACTS

The parties' relationship began in 1975 when Roseberg sold a feedlot to Steen for $55,000 on a contract for deed. Payments on the contract continued until 1978.

Between 1981 and 1983, Roseberg lent Steen substantial sums of money. In 1981, he lent Steen $20,000 for operating expenses. In 1982, Roseberg co-signed a bank loan for Steen in the amount of $70,000 for operating expenses. Roseberg took a security interest in Steen's 1982 crops. Steen made only partial payment on this note, which has a remaining balance of $65,000.[1]

In the spring of 1982, the parties entered into an agreement under which Steen fed and cared for Roseberg's cattle for 43 cents per pound gain. Upon sale of this first group of cattle, Steen received $8,000; the remaining $867.62 of his earnings was to be applied towards the $20,000 loan.

In the fall of 1982, Steen began feeding and caring for a second group of cattle. The parties dispute whether there was an agreement to again pay 43 cents per pound gain or whether Steen was only to be paid for his labor. While Steen was caring for the cattle between October 1982 and July 1983, Roseberg advanced $12,600 to Steen and his sons, expended $2,510 for the purchase and treatment of corn, and spent $11,956.23 for hay, minerals, and other concentrates.

In March 1983, Roseberg paid $16,350 to three of Steen's landlords for rent on land to be farmed during the 1983 crop year. Steen executed a financing statement encumbering his 1983 crop as security for this loan.

In May 1983, Steen petitioned for bankruptcy.

In July 1983, Roseberg removed his cattle from the feedlot and transported them to Sisseton, South Dakota for sale. Due to an order obtained by Steen from the bankruptcy court, Roseberg was forced to wait a week to sell the cattle and incurred feed costs of $2,695.05 at Sisseton.

In the fall of 1983, Steen sold his 1983 crop to Halstad Elevator, which made out

---

1. In another state court judgment, Roseberg was granted possession of the 1982 crops and awarded attorney's fees and costs of $3,422.63.

two checks payable to the order of Steen, Roseberg, and Lynn Steen[2] in the amount of $18,830.73. Roseberg sued when Steen refused to sign the two checks over.

Steen answered and counterclaimed for damages resulting from his care and feeding of Roseberg's cattle from October 1982 to July 1983. Steen also asserted he was entitled to the value of corn silage, hay bales, and straw bales left on the feedlot property at the time Roseberg retook possession in 1983. Roseberg denied the existence of a contract and affirmatively alleged that any recovery by Steen would have to be offset by the debts he owed Roseberg. The proceeds from the two checks were placed in escrow by court order.

Thirteen special verdict questions were drafted, covering the parties' claims. Questions 1 through 8 involved the various loans made by Roseberg and were answered by the trial court because there was no factual dispute over the loans and the amounts still owed. The court determined that $23,000 remained on the 1981 note, that $65,000 remained on the 1982 $70,000 loan, and that Roseberg had paid $16,350 to three of Steen's landlords in 1983.

Questions 9 through 13 involved Steen's claims and were submitted to the jury. In response to questions 9 through 11, the jury found that the parties had a contract with regard to the care and feeding of Roseberg's cattle, that Roseberg breached that contract, and that Steen was entitled to $100,019.20 in damages. In response to questions 12 and 13, the jury found that the value of hay bales, corn silage, and straw bales obtained by Roseberg when he repossessed the feedlot in 1983 was $5,838.

Based on the responses, the trial court entered judgment for Roseberg in the amount of $84,147.63, together with interest on the $23,000 note and on the $70,000 note; and judgment for Steen in the amount of $105,857.20, together with any prejudgment interest due. The parties had 10 days to submit computations as to the amount of interest due.

In response to post-trial motions by Roseberg, the trial court reduced Steen's damages by the interest owed on the various debts and by certain setoffs for the money advanced during the cattle feeding operation. Following a series of computations, the court ordered that $18,464.21 be paid to Roseberg from the escrow fund, and that the remaining amount of $1,419.64 be paid to Steen.

Both parties appeal.

## ISSUES

*Steen's issues:*

1. Did the trial court err in reducing Steen's damages by interest owed on the various loans and by amounts expended by Roseberg during the cattle feeding operation?

2. Did the trial court err by refusing to allow Steen an offset based on his lost equity in the feedlot due to cancellation of the contract for deed?

*Roseberg's issues:*

3. Should Steen have been estopped from arguing the existence of a feed contract?

4. Did the trial court err by immediately offsetting Steen's claim?

5. Did the trial court properly reject Roseberg's costs at Sisseton?

6. Did the trial court abuse its discretion in refusing to award Roseberg costs, disbursements, and attorney's fees?

## ANALYSIS

1. Steen argues that Roseberg is not entitled to interest on his various loans because he never requested interest in his pleadings. The trial court rejected this assertion as to the $23,000 and $70,000 loans, stating that interest need not be "specifically plead when a creditor is suing for a debt evidenced by a note which provides for interest." It allowed interest of 6 per-

**2.** The checks were made payable to Lynn Steen, Steen's now deceased brother, because he also had a financing statement filed on the 1983 crops. Although Lynn Steen's wife was initially a party in this action, she has relinquished any claim to the money.

cent on the $16,350 debt under Minn. Stat. § 334.01 (1986).

Steen incorrectly asserts that Roseberg failed to request interest. In his "Answer to Defendant's First Counterclaim," Roseberg sought interest on both the $20,000 note and on the $70,000 note. Moreover, the notes were admitted into evidence and both expressly provide for interest at rates of 15% and 12% respectively.

Steen also contests the trial court's method of computing the interest. He reasons that since Roseberg's debt to him after July 1983 under the feed contract exceeded his debt to Roseberg, Roseberg should be responsible for interest from July 1983 to the present. This argument, however, ignores the fact that any amounts Roseberg owed Steen in July 1983 were immediately used to offset the various loans and advances made by Roseberg to Steen. Thus, the trial court concluded that as of July 1983, Steen still owed Roseberg money.

Steen further challenges the trial court's allowance of other setoffs to Roseberg for advances and the cost of feed. We believe that the trial court properly reduced the jury's award by these undisputed amounts.

■ 2. Steen argues that the trial court erred in failing to give him credit for over $20,000 in equity which he lost when the feedlot contract for deed was cancelled. The trial court properly ruled that upon cancellation of a contract for deed a defaulting vendee generally forfeits any equity pursuant to the terms of the contract. *Miller v. Snedeker,* 257 Minn. 204, 218, 101 N.W.2d 213, 225 (1960). The trial court also properly rejected Steen's claim of unjust enrichment. *See Hommerding v. Peterson,* 376 N.W.2d 456, 459–60 (Minn.Ct. App.1985) (no recovery under theory of unjust enrichment where vendor does no more than exercise rights under contract for deed and there is no showing that it would be inequitable to allow vendor to retain payments made under contract).

3. Roseberg argues that Steen should be estopped from arguing that a contract existed because a state court determined in a prior action that Steen had relinquished possession of his 1982 crops to Roseberg.

Roseberg reasons that because Steen did not have possession of his 1982 crops, there could be no contract for Steen to supply the feed and the labor.

■ We disagree. The parties testified that the usual feed contract provided for supply of feed and labor, but that Roseberg often ended up supplying the feed. The trial court took this into consideration when it granted Roseberg offsets based on the costs incurred for feed.

4. Roseberg argues that the trial court erred by immediately offsetting Steen's contract claim from the amount owed on the promissory notes because Steen's claims were uncertain. We again disagree. The amount owed Steen under the contract was readily ascertainable based on figures available when Roseberg sold the cattle.

■ 5. Roseberg claims that the trial court erred in not allowing him credit for $2,695.05 in costs incurred by him at Sisseton for the feed and care of his cattle. We believe that the trial court properly rejected this claim based on Steen's testimony that the sale was unwarranted and unnecessary.

6. Roseberg finally claims that the trial court abused its discretion in refusing to award him costs, disbursements, and attorney's fees. Under Minn.Stat. § 549.21 (1986), a court may in its discretion award a party costs, disbursements, and reasonable attorney's fees if the other party acted in bad faith or asserted a frivolous claim. Steen's claims were found credible by the jury and trial court; they cannot be characterized as frivolous or asserted in bad faith.

**DECISION**

Affirmed.